**MONAHAN CORPORATION N.V., et al., Plaintiffs,**

v.

**Robert M. WHITTY, et al., Defendants.**

**No. CIV.A. 00–11424–LPC.**

United States District Court, D. Massachusetts.

June 1, 2004.

Blake J. Godbout, DiMaria & Godbout, Boston, MA, Arlene B. Marcus, Lemelman & Marcus, P.C., Boston, MA, Jeffrey P. Weber, Bennett & Forts, Holden, MA, Robert M. Whitty, Raynham, for Defendants.

Mark A. Rosen, Davidson, Manchel, & Brennan, Newton, MA, for Plaintiffs.

## MEMORANDUM AND ORDER ON MOTION FOR ATTORNEY FEES AND SANCTIONS

LAWRENCE P. COHEN, United States Magistrate Judge.

Pursuant to Rules 7.1(d) and (e) of the Local Rules of this Court [effective September 1, 1990], and upon review of the relevant pleadings, Defendants Blake J. Godbout and DiMaria & Godbout, P.A.'s Motion for Attorney's Fees and Sanctions Pursuant to Fed.R.Civ.P. 11 and M.G.L. 231, § 6F (# 157) is denied to the extent that it relates to attorneys' fees, and is allowed insofar as it relates to costs under the provisions of 28 U.S.C. § 1920.

1. *G.L. c. 231. § 6F:* To the extent that the motion for attorneys' fees brought by defendants Blake J. Godbout and DiMaria & Godbout, P.A. (hereinafter "defendants") is based, in part, on the provisions of G.L. c. 231, § 6F, this court finds and concludes that that statute cannot be—or should not be—woodenly applied in the context of a diversity case in a federal court.

To be sure, the general rule is that state-created attorney fee awarding statutes should be applied in federal diversity cases. *E.g., Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); 17A Moore's Federal Practice § 124.07[3][b], pp. 124-49—124-50 (Matthew Bender 3d Ed.). And that general rule has been generally accepted by our Court of Appeals. *E.g., Newell Puerto Rico, Ltd. v. Rubbermaid, Inc.,* 20 F.3d 15, 23-24 (1st Cir.1994); *Pan American World Airways, Inc. v. Ramos,* 357 F.2d 341 (1st Cir.1966). Indeed, in *dicta,* it has even been so said about the provisions of G.L. c. 231, § 6F. *Muthig v. Brant Point Nantucket, Inc.,* 838 F.2d 600 (1st Cir. 1988).[1] But the point, in this court's view, is certainly not a given.

For one thing, even though it might be said that G.L. c. 231, § 6F, is

---

1. In *Muthig,* Judge (now Justice) Breyer said

as much, but it was dicta, since the holding in

substantive in nature, *i.e.*, outcome-determinative, because of the mandate of the Rules Enabling Act (28 U.S.C. § 2072), neither the outcome-determinative test (*e.g.*, *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)), nor the *Byrd* [2] balancing test, nor the *Gasperini* [3] accommodation test, applies. And that is because it is well settled that the Federal Rules of Civil Procedure will supercede a state rule if a federal rule is coextensive with the state rule, and if the federal rule is otherwise constitutional. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). [4] In this case, it is clear that Rule 11 of the Federal Rules of Civil Procedure is, at the very least, coextensive with the provisions of G.L. c. 231, § 6F. [5] And it can hardly be said–particularly by defendants who seek relief under that Rule as well–that Rule 11 is unconstitutional. *E.g.*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). For this reason, the Rules Enabling Act precludes an award of attorneys' fees under G.L. c. 231, § 6F.

And for another, even if the Rules Enabling Act does not foreclose the application of G.L. c. 231, § 6F, in a diversity case, that statute, insofar as this court can discern, is *sui generis* and quite unlike other attorney fees statute or rules. And that is because of the statutory framework. Section 6F is but one of a trilogy of statutes governing the award of attorneys fees. There are two other sections which define the scope of Section 6F and certain remedies as well. Section 6E of G,L 231 provides:

### § 6E. Definitions applicable to sections 6E to 6G

As used in sections 6E to 6G inclusive, the following words shall have the following meanings:-

"Court", the *supreme judicial court*, the *appeals court*, the *superior court*, the *land court*, any *probate court* and

---

that case was based on Rule 11, F.R. Civ. P., and not G.L. c. 231 § 6F ("Since we find sufficient support in Rule 11, we need not consider the appellants' arguments in respect to the state statute.")

In *Nash v. Trustees of Boston University*, 790 F.Supp. 48 (D.R.I.1991), upon which defendants rely, Judge Pettine did apply the provisions of G.L. c. 231, § 6F to a diversity case. But, in that case, there was no extended discussion about the principle, since the plaintiff, against whom attorneys' fees were sought, conceded that that statute applied.

2. *Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

3. *Gasperini v. Center for Humanities*, 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).

4. There that Court stated, among other things (*Id.* at 471, 85 S.Ct. 1136):

When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* Choice: *the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.* (Emphasis added).

5. Indeed, defendants concede as much. They say that they are entitled to attorneys' fees under G.L. 231, § 6F, because the claims brought against them were wholly insubstantial, frivolous, and advanced in bad faith. *See e.g.*, defendants' Memorandum of Law in Support of Their Motion for Sanctions Pursuant to Fed.R.Civ.P. 11 and M.G.L. 231, § 6F (# 158)(hereinafter "Defendants' Memorandum"), p. 7. They later say that they are entitled to the same relief under Rule 11 on even a lesser showing—*i.e.*, they do not even have to establish bad faith. Defendants' Memorandum, p. 16–17. Accepting that at face value, it is clear that Rule 11 is, at the very least, coextensive with relief available under Rule 11 to the extent that their claims to relief are bottomed on the notion that plaintiff filed frivolous claims against them.

any *housing court,* and any judge or justice thereof;

"Civil action", any civil proceeding in any court except those conducted pursuant to chapters one hundred and nineteen, one hundred and twenty-three, chapter one hundred and twenty-three A or chapter two hundred and ten;

"Party", any person, *including any officer or agency of the commonwealth or subdivision thereof,* or any authority established by the general court to serve a public purpose. (Emphasis added).

And Section 6G provides:

## § 6G. Appeals; motions for expenses for insubstantial, frivolous or bad faith claims or defenses

Any party aggrieved by a decision on a motion pursuant to section six F may appeal as hereinafter provided. If the matter arises in the *superior, land, housing* or *probate* court, the appeal shall be to the *single justice of the appeals court* at the next sitting thereof. If the matter arises in the *appeals court* or before a *single justice of the supreme judicial* court, the appeal shall be to the *full bench of the supreme judicial court. The court deciding the appeal shall review the finding and award, if any, appealed from as if it were initially deciding the matter, and may withdraw or amend any finding or reduce or rescind any award when in its judgment the facts so warrant.*

Any party may file a notice of appeal with the clerk or register of the court

hearing the motion within *ten days* after receiving notice of the decision thereon. The clerk or register shall then forward the motion, the court's findings and award, and any other documents relevant to the appeal to the clerk of the court deciding the appeal who, upon receipt thereof, shall refer the matter to the court for speedy decision and shall notify the parties of such decision, which shall be final. *Any appeal to the supreme judicial court or the appeals court shall proceed according to the Massachusetts Rules of Appellate Procedure: any appeal to a single justice of the Appeals Court shall proceed under the rules for the regulation of practice before a single justice of that court.* The payment of any award made pursuant to section six F shall be stayed until the completion of all appeals relating to the civil action in which the award was made. (Emphasis added).

■ In a very real sense, Section 6E, which defines the parameters applicable to Section 6F, and Section 6G, which defines the procedure for review of motions filed under Section 6F, are not unlike limited "door closing" statutes.[6] That is to say, Section 6E delimits those courts authorized to make an award under Section 6F to the Massachusetts Supreme Judicial Court, the Massachusetts Appeals Court, the superior, land, probate, and housing courts of the Commonwealth. Conspicuously absent is any reference to the district courts of the Commonwealth, the

---

**6.** *See e.g.,* 17A Moore's Federal Practice § 124.07[2][a], p. 124–49—124–44 (Matthew Bender 3d Ed.)("State 'door-closing' statutes make state court unavailable to certain types of litigants or cases.").

As this court views it, Section 6F, read against the backdrop of Section 6E, is a limited "door-closing" statute for the reason that the Great and General Court of the Commonwealth, on the one hand, created a right to

seek attorneys' fees in circumscribed circumstances, and, on the other, said that enforcement of that right was limited to actions brought in the courts listed in Section 6E, to wit: the Massachusetts Supreme Judicial Court, the Massachusetts Appeals Court, the superior, land, probate, and housing courts of the Commonwealth. To that extent, the "door-closing" was not absolute, but was and is limited.

Boston Municipal Court, and, of course, the federal district courts. And this was not a mere slip of the scrivener's pen. To the contrary, the Massachusetts legislature said what it meant and meant what it said when it limited relief under Section 6F to applications in those courts referred to in Section 6E, and those courts alone. That is the holding of the Massachusetts courts time after time again, *see e.g., Brossi v. Fisher,* 51 Mass.App. 543, 545, 747 N.E.2d 714 (Mass.App.Ct.2001)(district court or judge thereof without authority to make an award under Rule 6F); *Nissenbaum v. McGovern,* 1995 WL 679113 *2 (Mass.App.Div.1995);[7] *Spunt v. Green,* 1994 WL 69561 *3 n. 3 (Mass.App.Div. 1994); *Marino v. Kandris,* 1997 WL 538742 *2 (Mass.App.Div.1997)(and cases cited therein),[8] and pending legislative action[9] cements the view that the Massachu-

**7.** There that court observed (*Id.*):

Section 6F of G.L.c. 231 provides for the award of reasonable attorney's fees and other costs and expenses in cases of insubstantial, frivolous or bad faith claims or defenses. It is clear from § 6E of G.L.c. 231, however, that § 6F authority has not been extended to the District Court Department. *Mullen v. Connolly,* 1989 Mass.App. Div. 164, 165; *Brentwood Nursing Home, Inc. v. Goldstein,* 1986 Mass.App.Div. 8. That statute could not have served, therefore, as a proper basis for the ruling at issue herein. (Footnote 3 omitted).

And to underscore the legislative intent, that Court observed in footnote 3 (*Id.*):

There seems to be little justification in the present day for a denial to the district court of the same authority granted to other trial court departments in this Commonwealth to award attorney's fees or other costs against a party who has presented insubstantial, frivolous or bad faith claims. *Until the Legislature amends G.L.c. 231, § 6E, however, the district court is without such authority* (Emphasis added).

**8.** In *Marino,* the court observed (*Id.*):

However, the defendant has also sought counsel fees pursuant to G.L. c. 231, § 6F which governs frivolous actions in certain courts. Section 6E of G.L. c. 231, *which lists the courts in which § 6F is applicable, does not include the District Court. Taupa Lithuanian Fed. Credit Union v. Bajercius,* 1997 Mass.App. Div. 31, 32 n. 3[, 1997 WL 129377]; *Nissenbaum v. McGovern,* 1995 Mass.App. Div. 153, 154[, 1995 WL 679113]; *Spunt v. Green,* 1994 Mass.App. Div. 27, 29 n. 5[, 1994 WL 69561]; *Mullen v. Connolly,* 1989 Mass.App. Div. 164, 165; *Brentwood Nursing Home, Inc. v. Goldstein,* 1986 Mass.App. Div. 8. In view of the repeated decisions to this effect, it would ap-

pear that efforts to recover under § 6F in the District Court Department should themselves be regarded as frivolous. (Emphasis added).

**9.** On January 1, 2003, a bill was introduced into the Massachusetts House (2003 MA H.B. 735) which, if it passed and became law, would have, under Section One of that bill, amended G.L. c. 231, § 6E, to include the Boston Municipal Court and the district courts of the Commonwealth, to wit:

Court," the supreme judicial court, the appeals court, the superior court, the land court, the *Boston municipal court,* any *district court,* any probate court, and any housing court, and any judge or justice thereof; (Emphasis added).

A corresponding amendment to Section 6G would have been made to Section 6G of c. 231 *vis a vis* appellate rights.

That bill, however, is still pending, and is not the law of this Commonwealth. At best, that bill makes it clear that the legislature, in its first iteration of c. 231, § 6F–*i.e.,* the iteration which remains current pending passage (if ever) of H.R. 735–specifically intended that Section 6F awards of attorneys fees could be made by, and only by, those courts (or judges or justices thereof) specifically delineated in Section 6E.

We recognize, of course, that the *reason* the Massachusetts legislature limited the forums in which Section 6F motions could be filed appears to be its concern that litigants in smaller cases might be chilled in pursuing valid legal claims for fear of sanctions. *See e.g., Brossi, supra* (Section 6E represents a "legislative determination that litigants in smaller cases should not be threatened with the sanctions permitted by § 6f"). And that, of course, is, most likely, not a concern in federal diversity cases requiring the jurisdic-

setts legislature, in enacting that statutory trilogy, clearly meant to limit Section 6F fee awards to actions brought, and only brought, in the courts set forth in Section 6E. For this reason, this court finds and concludes that the Massachusetts legislature, in granting a right to seek an award of attorneys' fees under G.L. c. 231, § 6F, never intended that that relief could be sought in an action brought in a federal district court.[10] And to the extent that defendants Blake J. Godbout and DiMaria & Godbout, P.A.'s Motion for Attorney's Fees and Sanctions Pursuant to Fed. R.Civ.P. 11 and M.G.L. 231, § 6F (# 157) is predicated on G.L. c. 231, § 6F, it is denied for the reasons set forth above.

■ 2. *Timeliness of the Rule 11 Motion:* To the extent that defendants seek an award of attorneys' fees under the provisions of Rule 11, F.R. Civ. P., that motion, in this court's view, comes too late. On March 17, 2004, this court entered summary judgment on behalf of Godbout and DiMaria & Godbout, P.A.'s.[11] One month later, without seeking sanctions and/or attorney's fees, Godbout and DiMa-

ria & Godbout, P.A., sought entry of a separate and final judgment on their behalf. *See* Docket # 154. On the basis of that motion, Final Judgment was entered on the behalf of Godbout and DiMaria & Godbout, P.A. on April 14, 2004. (# 155). Godbout and DiMaria & Godbout, P.A. then waited yet another month, more or less, to file this motion.

Rule 11, on its face, says nothing concerning the timing of filing motions for sanctions. The advisory committee, however, indicates that motions should be filed "promptly" after determining the basis for the motion, Fed.R.Civ.P. 11 (advisory note of 1993), and relevant case law endorses the "promptly" requirement. *E.g., Kaplan v. Zenner,* 956 F.2d 149, 150, 151 (7th Cir.1992)(sanctions motion should, if appropriate, be filed within a reasonable time after discovery of the basis for a motion). Beyond that, however, the 1993 amendments to Rule 11, and particularly the so-called "safe harbor" provision thereof (Fed.R.Civ.P. 11(c)(1)(A), adds yet another requirement in terms of the filing of a motion. As observed by one Court (*Bar-*

tional amount in controversy as a predicate to subject matter jurisdiction. But the raison d'^etre is simply beside the point, since it does not augur against the clear conclusion that the Massachusetts law makers, in enacting Section 6F of chapter 231, fine-tuned that statute by specifically limiting the courts in which Section 6F relief could be sought.

10. Beyond the plain language of relevant statutes, and the numerous holdings to the effect that the Massachusetts legislature only intended that Section 6F relief be available in those specific courts delineated in Section 6E, another reason exists for concluding that the legislature did not intend that Section 6F be available in federal diversity cases. As indicated, *supra,* Section 6E makes such awards available against not only private parties, but agencies of the Commonwealth as well. That, in turn, represents a waiver of sovereign immunity to the extent that such fees are extracted from the public fisc. That, of course,

presents special concerns. In the only case of which this court is aware, the Massachusetts Supreme Judicial Court, in addressing legislative intent *vis a vis* actions brought under the Massachusetts Tort Claims Act, concluded that such actions could *not* be brought in the federal district courts. *Irwin v. Commissioner of the Dep't of Youth Servs.,* 388 Mass. 810, 448 N.E.2d 721, 724 (1983) (holding that the Act only waives sovereign immunity for a claim brought in Massachusetts Superior Court). This sound policy reason, coupled with that set forth above in the text, augurs against a conclusion that Section 6F relief is available in actions brought in the federal courts.

11. This was the second motion for summary judgment filed by Godbout and DiMaria & Godbout, P.A. An earlier motion for summary judgment, apparently based on the same grounds as urged in the later motion, was denied by another judge of this court.

ber v. Miller, 146 F.3d 707, 710–711 (9th Cir.1998))):

There is no doubt that Carlsen's patent claim, upon which federal jurisdiction was founded, was not "warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law." *See* Fed. R.Civ.P. 11(b)(2). It is also abundantly clear that Imageware gave Carlsen repeated notice of that deficiency. Unfortunately for Imageware, however, it did not follow the procedure required by Rule 11(c)(1)(A) for an award of sanctions upon its motion. By the time Imageware filed its motion, the offending complaint had long since been dismissed.

Rule 11(c) authorizes the court to award sanctions "subject to the conditions stated below." One of those conditions, part of the 1993 amendments to the Rule, states:

> [A motion for sanctions] shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contentions, allegation, or denial is not withdrawn or appropriately corrected.

Fed.R.Civ.P. § 11(c)(1)(A). The purpose of the amendments is made abundantly clear by the Advisory Committee Notes:

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refused to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes re-

luctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.

Fed.R.Civ.P. 11; Adv. Comm. Notes, 1993 Amend. *Carlsen was not given the opportunity to respond to Imageware's motion by withdrawing his claim, thereby protecting himself totally from sanctions pursuant to that motion. The purpose of the amendment was entirely defeated. An award of sanctions cannot be upheld under those circumstances.* See Elliott v. Tilton, 64 F.3d 213, 216 (5th Cir.1995); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995).

The district court observed that Imageware had given multiple warnings to Carlsen about the defects of his claim. Those warnings were not motions, however, and the Rule requires service of a motion. That requirement, too, was deliberately imposed, with a recognition of the likelihood of other warnings. As the Advisory Committee stated:

> To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.

*Id.* It would therefore wrench both the language and purpose of the amendment to the Rule to permit an informal warning to substitute for service of a motion.

The district court stated that observance of the Rule in this case would have been futile, because the offending complaint had already been dismissed. Moreover, the motion was both served and filed on a day that preceded by more than 21 days the deadline for filing papers for the scheduled motion hearing. According to the district court, "Defendants missed complying with the 'safe harbor' provision only by filing their motion with the court too early, not by serving it on Plaintiff too late."

The purpose of the safe harbor, however, is to give the offending party the opportunity, within 21 days after service of the motion for sanctions, to withdraw the offending pleading and thereby escape sanctions. *A motion served after the complaint had been dismissed did not give Carlsen that opportunity.* As the Advisory Committee noted:

> Given the "safe harbor" provisions discussed below, a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention).

*Id. In light of the clear language and intent of the amended Rule, we agree with the Sixth Circuit that "a party cannot wait until after summary judgment to move for sanctions under Rule 11." Ridder v. City of Springfield,* 109 F.3d 288 (6th Cir.1997), *cert. denied,* 522 U.S. 1046, 118 S.Ct. 687, 139 L.Ed.2d 634 (1998). (Emphasis added).

That holding in *Barber v. Miller, supra,* is consistent with the same observations subscribed to by the commentators. *See e.g.,* 2 Moore's Federal Practice § 11.22[1][c], pp. 11–41—11–42 (Matthew Bender 3d Ed.).[12]

In this case, defendants were, by their own admission (Defendants' Memorandum, Exhibit C), aware of the basis for the relief which they now seek more than a year ago.[13] Despite that knowledge some six-

---

**12.** There it was observed, *inter alia (Id.)*:

[c]—Time for Filing Motion

Rule 11 contains no explicit time limit for a sanctions motion. The 1993 Advisory Committee Note, however, provides district courts with some guidance and considerable flexibility. Although it suggests that Rule 11 motions should generally be filed "promptly," it notes that in some cases it would be inappropriate to move until after the target has had time for reasonable discovery.

*The 21–day, safe-harbor service requirement controls not only the earliest date on which a motion may be filed (see [b], above), it also indirectly controls the last date on which a Rule 11 sanctions motion may be filed. At the very least, a party must serve its Rule 11 motion before the court has ruled on the pleading, and thus before the conclusion of the case.* Otherwise, the purpose of the "safe harbor" provision would be nullified. This has been interpreted to mean that Rule 11 motions must be served at least a full 21 days before the court concludes the case or resolves the offending contention, because if the court disposes of the offending contention within the 21–day safe-harbor period after service, it becomes impossible under the provision of Rule 11(c)(1)(A) to file the motion or otherwise present it to the court. The Rule permits filing of the motion only after the expiration of the full 21–day "safe-harbor" period following service of the motion.

**13.** Exhibit C indicates that counsel for the defendants wrote counsel for plaintiff on January 28, 2003, and threatened to file a Rule 11 motion unless plaintiffs dismissed the action against the defendants on or before February 4, 2003. Counsel for defendants, however, did not carry that threat forward, and never, until after the entry of judgment in their favor, served and/or filed a Rule 11 motion. Indeed, insofar as this court can determine from the relevant pleadings, defendants, even after the entry of judgment, did not comply with the safe-harbor requirements of Fed.R.Civ.P. 11(c)(1)(A)–*i.e.,* they did not *serve* the motion on counsel for the plaintiffs before *filing* the motion.

Defendants seemingly suggest—but fall short of actually saying—that the basis for a

teen months ago, defendants did not serve a file a Rule 11 motion, and they certainly did not, before the grant of summary judgment and the entry of a final and separate judgment in their favor, comply with the safe-harbor requirements of Fed.R.Civ.P. 11(c)(1)(A). Indeed, even after the entry of judgment, the defendants have not complied with that safe-harbor provision. Moreover, solely from an equitable viewpoint, defendants' filing comes too late. As indicated above, p. 7, when defendants filed their renewed motion for summary judgment, nothing was said about the award of attorneys' fees. So, too, when they filed their motion for entry of a separate and final judgment. Again, nothing was said about attorneys' fees. It was only after that latter unopposed motion was allowed, at a time when all appellate

rights *vis a vis* that final and separate judgment had virtually gone by the boards in terms of temporal deadlines,[14] that defendants first presented their Rule 11 motion.

There is no occasion, in this case, to draw a bright line in terms of timing of the filing of Rule 11 motions in each and every circumstance. Here it is clear that the defendants failed to comply with the safe-harbor provisions of Rule 11, then and now, and, as a matter of equity, chose to await the running of any appeal rights to file that motion. Under these circumstances, the Rule 11 motion comes too late, and it is denied for that reason.

Accordingly, for the reasons set forth above,[15] Defendants Blake J. Godbout and

---

Rule 11 motion could not have been known until after this court entered its Memorandum and Order granting the motion for summary judgment. But that hint surely pales when viewed through the prism of defendants' January 28, 2003, letter to counsel for the plaintiffs, and defendants' own representations in their supporting memorandum–*e.g.*, Defendants' Memorandum, p. 5 ("Despite an additional two (2) years of additional discovery to adduce some *scintilla* of evidence to support their claims, Plaintiffs failed in their attempts.")(Emphasis added).

14. The separate and final judgment was entered on April 14, 2004. The Rule 11 motion currently before this court was filed in this court on May 13, 2004, at 1:45 p.m. According to the certificate of service accompanying that motion, it was *mailed* to, not *served* on, counsel for the plaintiff on that same day— May 13, 2004. As we see it, any appeal by plaintiffs in connection with the separate and final judgment entered in favor of these defendants would have to have been filed on or before Friday, May 14, 2004—leaving plaintiffs with no realistic breathing room to appeal, something they well may have done had they been aware that defendants were seeking attorneys' fees of some $65,000, more or less.

15. Because this court has determined that the defendants are not entitled to the relief sought (apart from allowable costs under the provi-

sions of 28 U.S.C. § 1923) on the procedural grounds referred to above, this court does not fully address the claim on the merits.

In passing, however, this court can only observe that much of the reason that this litigation was protracted can be laid on defendants' own doorstep. When they filed their first motion for summary judgment in January of 2003, the defendants ignored the clear mandate of Local Rule 56.1 by failing to file a statement of material undisputed facts. That failing was called to the attention of the defendants and the judge to whom the case was assigned. That first motion (which differs in no respect from the current motion) was denied without prejudice (although the basis for that ruling is not clear from the record, it could well be said that, absent a concise statement of undisputed material facts, that judge could well have concluded that material facts were disputed). Undeterred by all of this, defendants renewed a motion for summary judgment. Again, they failed to comply with Local Rule 56.1. And because of that, coupled with the fact that their primary arguments for judgment focused on a claim lack of standing by the plaintiffs, and a claimed accord and satisfaction (both of which this court determined to be wholly without merit), defendants left it to this court to sift through the pleadings, willy-nilly, to determine that which was disputed, and that which was not disput-

DiMaria & Godbout, P.A.'s Motion for Attorney's Fees and Sanctions Pursuant to Fed.R.Civ.P. 11 and M.G.L. 231, § 6F (# 157) is denied to the extent that it relates to attorneys' fees, and is allowed insofar as it relates to costs under the provisions of 28 U.S.C. § 1920. Costs are awarded in favor of the defendants Blake J. Godbout and DiMaria & Godbout, P.A. in the amount of $3,292.25, for those expenditures listed on page 19 of the schedule attached to the Affidavit of Blake J. Godbout in Support of Award of Attorney's Fees (Defendants' Memorandum, Exhibit E).

ed, contrary to the teachings of *Stepanischen v. Merchants Despatch Trans. Corp.,* 722 F.2d

922, 930 (1st Cir.1983) and Local Rule 56.1.