DMITRIY TILMAN & others[1] vs. DAVID O. BRINK & another.[2]

No. 08-P-498.

Suffolk. February 4, 2009. - August 18, 2009.

Present: KANTROWITZ, GRAINGER, & SIKORA, JJ.

*Practice, Civil,* Frivolous action, Attorney's fees. *Boston Municipal Court.*

In a civil action, a Boston Municipal Court judge properly imposed a sanction of attorney's fees on the plaintiffs' attorneys, where the record demonstrated that the suit was filed in bad faith and without any viable factual basis [850-852]; however, the judge did not have the authority to impose sanctions against the plaintiffs themselves, where G. L. c. 231, § 6F (which permits a "court" to award reasonable attorney's fees and costs against any party, attorney, or litigant whose claim or defense was wholly insubstantial, frivolous, and not advanced in good faith), does not apply to the District Court or the Boston Municipal Court, and where, although judges possess the inherent power to act as necessary to secure the full and effective administration of justice, the Legislature has made clear its intent to withhold authority from the District and Municipal courts to impose attorney's fees against litigants [852-854]. GRAINGER, J., concurring in part and dissenting in part.

CIVIL ACTION commenced in the Boston Municipal Court Department on August 8, 2001.

The case was heard by *Annette Forde,* J., on a motion for summary judgment, and a motion for attorney's fees and costs, filed on November 25, 2003, and renewed on June 14, 2006, was also heard by her.

*William J. McCrevan, Jr.,* for the plaintiffs.

*David O. Brink,* pro se.

KANTROWITZ, J. A baseless suit was filed in the Boston Municipal Court Department. Ultimately, the judge ordered attorney's fees imposed against the attorneys and litigants who brought the

---

[1]Vitaly Zakuta and Yelena Kratsberg.

[2]Smith & Brink, P.C.

complaint. Clearly the judge had the authority, under Rule 11 of the Massachusetts Rules of Civil Procedure, 365 Mass. 753 (1974), to act as she did against the attorneys. The issue presented is whether she was authorized to order fees against the litigants. We hold that she was not authorized to do so.

1. *Background.* To provide clarity and context it is important to discuss prior proceedings involving many of the same people involved in the present suit. See *Dimtil Med. Supplies, Inc.* v. *Metropolitan Ins. Co.*, 69 Mass. App. Ct. 1117 (2007). Dmitriy Tilman owned Dimtil Medical Supplies, Inc. (Dimtil). On February 3, 1998, Dimtil sued Metropolitan Insurance Company (Metropolitan), seeking reimbursement for the costs of medical supplies Dimtil had provided various insureds of Metropolitan. Metropolitan counterclaimed, alleging that the supplies were medically unnecessary and the bills were excessive. Of significance, Metropolitan was represented by Audrey Parr, then of Morrison, Mahoney & Miller[3]; its claims adjuster was Karen Golab. Dimtil was represented by attorneys William McCrevan and Neil Cohen.

We now turn to the salient facts of the case at bar. While the Dimtil-Metropolitan suit was being played out, plaintiff Tilman, on the evening of August 10, 1998, and his friends — Vitaly Zakuta, Yelena Kratsberg, and Michael Leyfer — went to a movie at the Cleveland Circle Theater in Brookline. The four friends parted around 1:00 A.M., with plaintiffs Zakuta and Kratsberg as passengers in Tilman's car and Leyfer in his own car. Approximately thirty minutes later, Leyfer's car collided with Tilman's car.

Commerce Insurance Company (Commerce) was the insurer of both cars and, after an initial investigation, determined that Leyfer was responsible for the accident and began paying personal injury protection (PIP) benefits to Tilman ($3,890), Zakuta ($2,000), and Kratsberg ($2,110). McCrevan represented Tilman. It is unclear from the record whether Cohen represented Zakuta and Kratsberg at this time.

In March, 1999, Commerce retained the defendants, David Brink and his law firm, Smith & Brink, P.C. (S&B), to further investigate the plaintiffs' automobile insurance claims. Brink

---

[3]Parr left that law firm to become a partner at Smith & Brink, P.C., in February or early March, 1999.

determined that the plaintiffs had provided materially false information and had engaged in an insurance scam.[4] Based on this information, S&B notified the plaintiffs on December 20, 1999, that Commerce would not continue to pay their claims.

Some months later, in April, 2000, the Dimtil-Metropolitan case was tried in Superior Court, resulting in a mixed judgment. The judgment awarded $5,822.42 to Dimtil for unpaid reimbursements; $19,000 to Metropolitan on its G. L. c. 93A claim; and attorney's fees for each party.[5] Dimtil received $34,000 in attorney's fees and $8,191.12 in costs[6]; Metropolitan received $40,000 in attorney's fees and $15,090.57 in costs. Both parties appealed.

Brink handled the appeal for Metropolitan. In or around April, 2001, he spoke with McCrevan, counsel for Dimtil, about a possible settlement prior to the appeal moving forward. During this conversation, McCrevan allegedly threatened that if Brink did not accept a settlement agreement favorable to Dimtil, he would make Brink pay. Brink did not speak with McCrevan again.[7]

Approximately four months later, in August, 2001, Tilman, Zakuta, and Kratsberg — through their attorneys McCrevan and Cohen — filed the instant Boston Municipal Court action against Commerce, Leyfer, Brink, S&B, and Karen Golab, the claims adjuster for Metropolitan.[8] Against the latter three, the plaintiffs alleged intentional interference with economic relations and

[4]In addition to Commerce learning that the plaintiffs and Leyfer were friends and had seen a movie together earlier that night, Brink found that the plaintiffs filed inconsistent claim reports, made contradictory statements to their medical providers regarding how they were injured, and refused to cooperate, making themselves unavailable for questioning.

[5]Metropolitan was found to have violated G. L. c. 93A, but no damages, other than attorney's fees, were awarded.

[6]Attorney McCrevan claimed 491.35 hours of work on the case, totaling $110,770, plus costs of $8,191.12. Attorney Cohen claimed one hundred hours of work, worth $22,075. The judge disallowed nearly $100,000 of their fee request, ruling that "an expenditure of almost 600 attorneys' hours . . . is extraordinarily excessive and disproportionate to the amount of damages involved."

[7]The case proceeded to this court, wherein the judgment of the trial court was affirmed. See *Dimtil Med. Supplies, Inc.* v. *Metropolitan Ins. Co.*, 69 Mass. App. Ct. 1117 (2007).

[8]Attorney McCrevan continued to represent Tilman. Attorney Cohen

civil conspiracy, claiming that a "sham" investigation was conducted on behalf of Commerce that ultimately deprived the plaintiffs of automobile insurance payments.[9] The sham investigation allegedly resulted from a March, 1999, telephone conversation between Metropolitan claims adjuster Golab and Audrey Parr, who had been counsel for Metropolitan but left her prior law firm to join S&B, the firm retained by Commerce, in the spring of 1999.[10] The plaintiffs allege that in that conversation, Golab gave Parr information regarding Tilman's automobile insurance policy records, which had been received from the Registry of Motor Vehicles.

Brink and S&B filed a motion to dismiss, which was denied on October 2, 2001. More than a year later, on January 9, 2003, Brink and S&B filed a motion for summary judgment (which Golab joined orally). In opposition, the plaintiffs filed voluminous documentation, without organization or annotations, alleging that the bases for their claims were contained therein. The motion for summary judgment was allowed on April 7, 2003, on all counts involving Brink, S&B, and Golab. The judge found that Tilman's allegation that his automobile insurance policy records were shared via Golab with Brink or anyone at Commerce "amounts to no more than speculation."[11,12] More-

---

represented Zakuta and Kratsberg. Both attorneys apparently share an office at 11 Beacon Street, Suite 625, in Boston. The docket entries indicate that the "Complaint[s] entered without plaintiff counsel[s'] certification of compliance in regard to dispute resolution services." Two complaints were filed originally, one by Tilman and one by Zakuta and Kratsberg. The actions were later consolidated.

[9]The claims against Leyfer and Commerce, essentially for negligence and breach of contract, respectively, are not before us on appeal. See note 13, *infra.*

[10]Parr still represented Metropolitan on its case involving Dimtil. According to the itemized bill of Parr, S&B billed Metropolitan for Parr's work.

[11]At his deposition taken on behalf of the defendants, Tilman testified:

> *Q.*: "But you don't know of any conversations between Parr and Brink; do you?"
>
> *A.*: "No, I don't."
>
> *Q.*: "You don't know of any conversations between Brink and Golab; do you?"
>
> *A.*: "No."
>
> *Q.*: "And you don't know if any conversations between Golab and Parr were related to Brink; do you?"

over, the judge observed, there was no evidence that, in the conversation between Golab and Parr, "the [car] [a]ccident was mentioned, discussed, or even . . . was within the knowledge of either party." The plaintiffs did not appeal from the summary judgment.

On November 25, 2003, Brink and S&B filed a motion for attorney's fees, upon which the judge delayed acting until the remaining claims against Commerce and Leyfer came to final judgment. Once that occurred,[13] Brink and S&B renewed their motion, on June 14, 2006. The motion requested attorney's fees, costs, and associated expenses, totaling $30,617.08, arguing that the plaintiffs' complaint was solely intended to "harass, intimidate and embarrass" Brink and S&B. They also argued that the plaintiffs sought retribution for the role that S&B attorneys played in investigating the insurance claims and that by including claims against Brink and S&B the plaintiffs intended to

---

*A.*: "No."

*Q.*: "You just assume that; right?"

*A.*: "Yes."

[12]In his affidavit, Attorney McCrevan wrote that after the alleged Golab-Parr conversation, "the investigation of Mr. Tilman's August 10, 1998 auto accident began." It is difficult to discern how this conversation was improper. Golab and Parr were working together on the Dimtil case. Although Parr had left Morrison, Mahoney & Miller for S&B, she continued to represent Metropolitan. The information allegedly provided was neither confidential nor privileged. As the motion judge observed, "There is, therefore, nothing unlawful or improper about Golab's obtaining the records in question, and, in fact, the plaintiff has not alleged that there was."

Tilman also alleged that Brink and Parr motivated a disgruntled Dimtil employee, Darlene Wilson, to steal files and checks from his company and turn them over to the defendants. However, there was no evidence that Brink or Parr, both of whom were present when Wilson visited their office and gave a sworn statement, instigated her stealing of the documents. In addition, as counsel for Commerce and Metropolitan, they had a duty to inquire about allegations of fraud. The transcript of Wilson's sworn statement shows that she believed Dimtil engaged in insurance fraud and voluntarily spoke with Brink and Parr.

[13]The plaintiffs' claims against Commerce and Leyfer proceeded to trial, first to a Boston Municipal Court judge, and then de novo in Superior Court. Ultimately, a Superior Court jury returned a verdict for the defendants. The plaintiffs did not appeal from the resulting judgment.

deprive Commerce of its chosen attorney in their action against Commerce.

After a hearing, the defendants' motion was granted on September 15, 2006, pursuant to Mass.R.Civ.P. 11(a), 365 Mass. 753 (1974), and the "court's inherent supervisory powers." The judge ruled that "[a]ttorneys, who are duty bound to maintain the highest ethical standards possible in all circumstances, act as gatekeepers who ensure . . . that the business of the court is not demeaned by unfounded, fraudulent, frivolous, or spiteful actions . . . . These obligations were lost in the fervor of over-zealous advocacy in this case." The judge awarded payment of $30,000 in attorney's fees, ordering Tilman to pay $26,000, and apportioning $1,000 each from Zakuta and Kratsberg, $1,250 from Attorney McCrevan, counsel to Tilman, and $750 from Attorney Cohen, counsel to Zakuta and Kratsberg.

On December 20, 2007, the Appellate Division of the Boston Municipal Court Department affirmed the award of attorney's fees and dismissed the plaintiffs' appeal, concluding that the trial judge "was well within her discretion" and that "[t]he Plaintiffs have failed to demonstrate clear error." The Appellate Division held that "[t]he trial judge's findings and conclusions provide ample support for the determination that the Plaintiffs acted in bad faith in bringing the action against [Brink and S&B]." The plaintiffs timely appealed.

The plaintiffs argue that it was error for the Appellate Division to affirm the Boston Municipal Court judge's award of attorney's fees against the plaintiffs' attorneys and against the plaintiffs pursuant to rule 11 and the inherent powers of the court. We affirm the award against the attorneys, but reverse the award as imposed against the litigants.

2. *Sanctions against attorneys.* It is well settled that District Court judges have authority to award attorney's fees against attorneys pursuant to rule 11.[14] See *Crystal Constr. Corp.* v. *Hartigan*, 56 Mass. App. Ct. 324, 333-334 (2002). Rule 11(a) provides, in pertinent part, that "[t]he signature of an attorney

---

[14]For purposes of our discussion, we refer to the District Court and Boston Municipal Court interchangeably. See Mass.R.Civ.P. 1, as appearing in 423 Mass. 1404 (1996). See also *Sperounes* v. *Farese*, 449 Mass. 800, 801 n.2 (2007).

to a pleading constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is a good ground to support it; and that it is not interposed for delay." A "good ground" requires that the pleadings be supported by "reasonable inquiry and an absence of bad faith." *Bird* v. *Bird*, 24 Mass. App. Ct. 362, 368 (1987). See *New England Allbank for Sav.* v. *Rouleau*, 28 Mass. App. Ct. 135, 140-142 (1989); *Doe* v. *Nutter, McClennen & Fish*, 41 Mass. App. Ct. 137, 141-143 (1996). "[R]ule 11(a) authorizes a judge to impose attorney's fees and costs where an attorney has failed to show a subjective good faith belief that the pleading was supported in both fact and law." *Van Christo Advertising, Inc.* v. *M/A-COM/LCS*, 426 Mass. 410, 416 (1998). See *Psy-Ed Corp.* v. *Klein*, 62 Mass. App. Ct. 110, 113 (2004). On review, "our function is to determine whether the judge abused [her] discretion, which includes considering whether proper legal standards were applied and whether there was reasonable support for the judge's evaluation of the facts." *Van Christo Advertising, Inc.* v. *M/A-COM/LCS*, 426 Mass. at 417.

Here there was a sufficient basis for the judge to find bad faith and to order attorney's fees against McCrevan and Cohen pursuant to rule 11. Putting aside the vitality of the legal theory for initially filing suit, neither attorney investigated the telephone conversation between Golab and Parr, which formed the factual basis for the lawsuit, to determine what, if anything, Golab revealed to Parr and whether Parr supplied information to anyone at S&B. Counsel made no effort to depose Golab, Parr, or Brink until faced with the defendants' motion for summary judgment and, even then, failed to comply with the Rules of Civil Procedure and a Boston Municipal Court standing order.[15] The attorneys failed to prepare their own clients for depositions[16] and filed

---

[15]While the record is somewhat unclear, it appears that in opposition to summary judgment, counsel for Zakuta and Kratsberg, i.e., Cohen, needed more time to depose Golab, Brink, and Parr. In such an instance, an affidavit must be filed detailing why an opposition cannot be presented and why more time is needed. See Mass.R.Civ.P. 56(f), 365 Mass. 824 (1974). Additionally, counsel did not comply with Boston Municipal Court Standing Order 1-88, which prohibits discovery requests more than one year after the commencement of the action without leave of court. It appears that counsel for Zakuta and Kratsberg served notices of depositions and discovery requests without seeking leave of court to do so.

[16]Two of the plaintiffs, Zakuta and Kratsberg, were unable to articulate any

with the opposition to the summary judgment motion a "sheaf" of unorganized documents for the court to decipher. Further, evidence suggested that counsel included Brink in the lawsuit out of spite because he did not agree to settle the Dimtil case favorably.[17] See *Doe* v. *Nutter, McClennen & Fish,* 41 Mass. App. Ct. at 142.

The judge was not wrong in concluding that the record demonstrated that the suit was filed in bad faith and without any viable factual basis. See *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 557 n.6 (1976) ("[Rule 11] imposes an obligation on attorneys . . . to ensure that sham pleadings are not employed"). Accordingly, the Appellate Division did not err in affirming the award of attorney's fees against the attorneys.

3. *Sanctions against litigants.* Given that rule 11 does not authorize a court to impose sanctions against litigants, as opposed to attorneys, a District Court judge may impose attorney's fees against litigants only if such a determination is provided for by statute or falls within the inherent powers of the District Court.[18]

General Laws c. 231, § 6F, allows a "court," upon motion by any party in a civil case, to award reasonable attorney's fees and costs against any party, attorney or litigant, whose claim or defense was "wholly insubstantial, frivolous and not advanced in good faith." *Ibid.,* inserted by St. 1976, c. 233, § 1. See *Ashford* v. *Massachusetts Bay Transp. Authy.,* 421 Mass. 563, 568-

specific facts to support their claims and only restated, without details, the allegations in their complaint.

[17]The plaintiffs' argument that the trial judge, and in turn the Appellate Division, failed to consider the subjective intent of the plaintiffs' attorneys by not considering McCrevan's affidavit is without merit. Unlike in *Crystal Constr. Corp.* v. *Hartigan,* 56 Mass. App. Ct. 324 (2002), upon which the plaintiffs rely, McCrevan's affidavit provided conclusory objections to the defendants' statements and did not detail any investigation McCrevan conducted to verify the basis for the claims. Compare *id.* at 334-335 (affidavit sufficiently demonstrated that defendant could reasonably have believed that case law justified his motion to dismiss), with *Psy-Ed Corp.* v. *Klein,* 62 Mass. App. Ct. at 115-116 (affidavit was "totally inadequate" and did not withstand motion for sanctions).

[18]Of course, attorney's fees may be awarded pursuant to an applicable clause in a contract. See *WHTR Real Estate Ltd. Partnership* v. *Venture Distrib., Inc.,* 63 Mass. App. Ct. 229, 235-236 (2005); *Robbins* v. *Krock,* 73 Mass. App. Ct. 134, 135-136 & n.2 (2008).

569 (1995). For purposes of this section, "court" is defined as "the supreme judicial court, the appeals court, the superior court, the land court, any probate court and any housing court, and any judge or justice thereof." G. L. c. 231, § 6E, inserted by St. 1976, c. 233, § 1. By omitting the District and Municipal courts from the definition of "court," the Legislature "determin[ed] that litigants in smaller cases should not be threatened with the sanctions permitted by § 6F." *Brossi* v. *Fisher*, 51 Mass. App. Ct. 543, 547 (2001). See *Monahan Corp. N.V.* v. *Whitty*, 319 F. Supp. 2d 227, 230-231 (D. Mass. 2004) (absence of reference to District Court and Boston Municipal Court by Legislature in drafting G. L. c. 231, §§ 6E and 6F, "was not a mere slip of the scrivener's pen"). Following this court's decision in *Brossi* v. *Fisher*, *supra*, holding that § 6F does not apply to the District Court, the Legislature has not chosen to expand the definition of "court." Accordingly, a District or Municipal Court judge does not have authority to award attorney's fees pursuant to § 6F.[19]

The question remains whether assessment of fees against litigants falls within the District Court's inherent powers. While we recognize that judges possess the inherent power to act "as necessary to secure the full and effective administration of justice," *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507, 514 (1972), the Legislature made clear its intent to withhold authority from the District and Municipal courts to impose attorney's fees against litigants. See *id.* at 513 ("It is well recognized that the General Court, pursuant to its general police powers, may enact legislation which declares or augments the inherent powers of the judiciary"). The Legislature, if it chose to give those courts such power,[20] could easily have

[19]In *Brossi*, the Appellate Division held that the District Court "trial judge did not have the power to enter an award under G. L. c. 231, § 6F." *Brossi* v. *Fisher*, 51 Mass. App. Ct. at 548. This conclusion is in conformity with past Appellate Division decisions. See, e.g., Mullen *vs.* Connolly, Mass. App. Div. (July 28, 1989); Nissenbaum *vs.* McGovern, Mass. App. Div., No. 9320 (November 8, 1995).

[20]Here we note the constitutional design that all courts other than the Supreme Judicial Court are created by, and have their jurisdiction circumscribed by, the General Court. See Part II, c. 1, § 1, art. 3, of the Massachusetts Constitution; *Opinion of the Justices*, 372 Mass. 883, 905 (1977). See also *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. at 513 n.6.

included them in the applicable statute, G. L. c. 231, §§ 6E and 6F. See *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934) ("a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished"); *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Ct. Dept.*, 439 Mass. 352, 355 (2003) ("A court may not add words to a statute that the Legislature did not put there"). We do not deem the absence of the proposed power as impeding the full and effective administration of justice, particularly in light of the availability of rule 11 sanctions against offending attorneys.

In the instant case, there was a plethora of evidence of bad faith by the litigants, Tilman, Zakuta, and Kratsberg. The judge found correctly that documents submitted in opposition to the plaintiffs' claims "establish[ed] that the investigation conducted by Commerce was, if anything, a reasonable investigation of what appeared to be suspicious circumstances surrounding the Accident." Tilman failed to demonstrate any facts showing collusion by the defendants, could not articulate any connection between Parr and the investigation by Commerce, and provided deposition testimony amounting to mere speculation (see note 11, *supra*). In addition, the findings reflect that Zakuta and Kratsberg "each testified under oath at their depositions that they did not know of any facts to support their claims." Based on this, it was understandable for the judge to award a total of $30,000 in attorney's fees to Brink and S&B. However, the trial judge did not have the authority to assess attorney's fees against the plaintiffs.[21] Given that she wanted to compensate Brink and S&B, she was free to assess the entire amount against the attorneys.

4. *Conclusion.* The decision of the Appellate Division is

---

[21]*Police Commissioner of Boston* v. *Gows*, 429 Mass. 14 (1999), which the Appellate Division relied on in affirming the award, involved the Superior Court, not the District or Municipal courts. More significantly, in *Gows*, the Supreme Judicial Court, in a "rare and egregious case[]," awarded attorney's fees "to compensate Gows for the needless litigation in which she has been forced to engage in order to enjoy the rights she had already been adjudicated to have." *Id.* at 19.

vacated. We affirm so much of the September 15, 2006, order as awarded attorney's fees against the attorneys, McCrevan and Cohen, and reverse the order insofar as it awarded attorney's fees against the plaintiffs, Tilman, Zakuta, and Kratsberg. We remand this case to allow the judge to determine whether, given our holding today, to adjust the amount of attorney's fees to be paid by each attorney (currently $1,250 for McCrevan and $750 for Cohen) to compensate Brink and S&B for defending the meritless suit.[22,23]

*So ordered.*

GRAINGER, J. (concurring in part and dissenting in part). I respectfully dissent from part 3 of the majority opinion, because I conclude that a judge has inherent authority to ensure the integrity of proceedings in the District Court by imposing sanctions against a party who has acted in bad faith. To the extent that we may glean findings from this record, we are presented with plaintiffs and counsel who colluded to file a baseless lawsuit.

Although I agree with the majority's thoughtful analysis of G. L. c. 231, § 6F, its referential use in the present case is based on the assumption that the Legislature may deprive a court of its inherent authority to impose sanctions for systemic misconduct by specifying how other courts may apply them. See *Commissioner of Probation* v. *Adams*, 65 Mass. App. Ct. 725, 731 (2006), quoting from *Gray* v. *Commissioner of Rev.*, 422 Mass. 666, 672 (1996) (where District Court has inherent power to fashion remedies for fraud on the court, "[s]uch power exists 'without statutory authorization and cannot be restricted or

---

[22]The plaintiffs also argue that the defendants waited too long to renew their motion for attorney's fees. However, they did not argue this point in the Appellate Division and, therefore, cannot argue it here. In any event, the defendants did not waive their right to attorney's fees. See *Society of Jesus of New England* v. *Boston Landmarks Commn.*, 411 Mass. 754, 756-757 (1992) ("determination of timeliness [of petition for attorney's fees] is . . . within the discretion of [the] court").

[23]We decline to grant the defendants attorney's fees to defend this appeal, as the plaintiffs' appeal was not frivolous. See *Avery* v. *Steele*, 414 Mass. 450, 455 (1993).

abolished by the Legislature' "). Chief Justice Qua considered the application of art. 30 of the Massachusetts Declaration of Rights to the question of inherent powers half a century ago: "Legislation may be enacted in aid of the judicial department, and doubtless in appropriate instances standards of conduct may be set up by statutes, but such statutes cannot preclude the judicial department from imposing higher standards or deprive that department of its ultimate power of control." *Collins* v. *Godfrey*, 324 Mass. 574, 576 (1949). And more recently the Supreme Judicial Court addressed circumstances posed here in considering a judge's authority to dismiss a complaint in response to a fraud on the court: "[A] judge has broad discretion to fashion a judicial response warranted by the fraudulent conduct." *Rockdale Mgmt. Co.* v. *Shawmut Bank, N.A.*, 418 Mass. 596, 598 (1994).

While a departure from the "American rule," each party bearing its own attorney's fees, requires a legislative fee-shifting provision, I view the judge's determination here as an imposition of sanctions in the form of reimbursement to an innocent party for litigation expense. The decision that both counsel and plaintiffs should participate in reimbursing the defendants was based on findings of wrongdoing by each, and not simply on which was the prevailing party. See *Police Commissioner of Boston* v. *Gows*, 429 Mass. 14, 18-19 (1999) (discussing, and adopting, rule of numerous other jurisdictions that judge may "consult[] [her] sense of justice in awarding attorney's fees to compensate [a party] for the needless litigation in which [the party] has been forced to engage").[1] Cf. *Avery* v. *Steele*, 414 Mass. 450, 457 (1993) (inappropriate to impose sanctions against party "[a]bsent some indication that [the party] herself was responsible for the inappropriate material").

In sum, the District Court, a court of "superior and general jurisdiction," G. L. c. 218, § 4, has the inherent power to "punish those who obstruct or degrade the administration of justice." *New England Novelty Co.* v. *Sandberg*, 315 Mass. 739, 746, cert. denied, 323 U.S. 740 (1944). See *Berlandi* v. *Com-*

---

[1]The majority points out, correctly, that *Gows* concerned a case in the Superior Court. I do not find that to be a relevant distinction; the decision speaks purely to inherent judicial authority and makes no mention of c. 231, § 6F, which had then been on the books for more than two decades.

*monwealth*, 314 Mass. 424, 441-442 (1943) (District and Municipal courts have inherent powers, which include power to punish for contempt); *Commissioner of Probation* v. *Adams, supra* at 737 (holding District Court had inherent power to expunge G. L. c. 209A order that was obtained through fraud on the court).

While jurisdiction in the District Court may be limited with respect to subject matter, amount in controversy, or geography, the rights conferred by art. 29 of the Massachusetts Declaration of Rights to "impartial . . . administration of justice" and the provisions of art. 30 vesting exclusive exercise of judicial power in the judiciary preclude restrictions on the authority of its judges to fashion appropriate sanctions such as the one presented here. This is even more emphatically the case where the converse of these same jurisdictional restrictions precludes many litigants from seeking recourse to, and obtaining protection from, other courts.

I would affirm the decision below.