## CITY OF WORCESTER *vs.* AME REALTY CORPORATION & others.[1]

No. 08-P-2049.

Suffolk. January 8, 2010. - June 21, 2010.

Present: CYPHER, BERRY, & SIKORA, JJ.

*Taxation,* Real estate tax: foreclosure of right of redemption. *Land Court,* Vacation of judgment. *Due Process of Law,* Notice. *Practice, Civil,* Appeal, Attorney's fees, Costs, Frivolous action. *Attorney at Law,* Signing of pleadings and other court papers. *Rules of Civil Procedure. Rules of Appellate Procedure.*

In a tax lien foreclosure action in the Land Court, a deputy recorder, sitting pursuant to G. L. c. 185, § 6, properly dismissed a petition to vacate a judgment of foreclosure filed by an individual who claimed a mortgage interest in a parcel of real property, where there was no merit to the individual's contentions that the tax collector's deed conveying the property to the city was insufficient, or that he was deprived of procedural and substantive due process by virtue of the failure of the city and the Land Court to furnish him with notice of the proceedings. [68-69]

In a tax lien foreclosure action in the Land Court, a deputy recorder, sitting pursuant to G. L. c. 185, § 6, properly allowed the motion of an intervener for an award of reasonable attorney's fees and costs pursuant to G. L. c. 231, § 6F, against an individual who filed a petition to vacate a judgment of foreclosure, where that petition was egregiously tardy and disruptive, and was blatantly unmeritorious [69-71]; further, the deputy recorder properly included counsel for the individual in the assessment of reasonable attorney's fees and costs against the individual, as a sanction under Mass. R. Civ. P. 11(a), where, especially in light of prior contrary decisions of the Land Court and Appeals Court, the failure to show a subjective good faith belief that the petition had factual and legal support provided sound reason for the Land Court to conclude that the attorney violated rule 11(a) [71-72].

This court awarded costs and attorney's fees under Mass. R.A.P. 25 against an individual whose appeal from the denial of a petition to vacate a judgment of foreclosure in a tax lien proceeding was frivolous [72-73]; however, this court declined to award appellate fees jointly and severally against the individual's counsel, where the request for such an award was not made under rule 25, and did not advance adequate argument on the important issue of an appellate attorney's liability for an assessment of fees under that rule, which was an issue of first impression [73-74].

---

[1]Demetrios G. Venetis, formerly known as James G. Venetis, intervener; Main South Community Development Corporation, intervener.

PETITION filed in the Land Court Department on June 11, 1999.

A motion for relief from judgment, filed on April 15, 2008, was heard, pursuant to G. L. c. 185, § 6, by a deputy recorder.

*Israel M. Sanchez, Jr.,* for Demetrios G. Venetis.

*John F. O'Day, Jr.,* Assistant City Solicitor, for the plaintiff.

*James A. Vevone, II,* for Main South Community Development Corporation.

SIKORA, J. Demetrios G. Venetis, an alleged party-in-interest whom we shall treat as an effective intervener in the Land Court proceedings, appeals from a 2008 final order of that court denying his motion to vacate a tax lien foreclosure judgment entered in favor of plaintiff city of Worcester (city) on October 2, 2001. That order effectively concluded his claim to a mortgage interest purportedly conveyed to him on or about November 1, 1996. The order also preserved the current ownership of the property by Main South Community Development Corporation (Main South) by purchase from the city on September 13, 2005. In addition, the order imposed financial sanctions upon both Venetis and his counsel for prosecution of a claim "not advanced in good faith, as both Venetis and his Attorney . . . had actual knowledge of both the [prior] Land Court judgment and Appeals Court decision" negating that claim. For the following reasons we affirm all terms of the final order.

*Background.* A summary of the main events of the long and winding history of this litigation is unavoidable. As of the close of fiscal year 1991, Ripley Real Estate Realty Trust, as owner of the property at 10 Ripley Street, had failed to pay its municipal real estate taxes. On or before March 30, 1992, mortgagee JRS Holdings Corporation (JRS) pursuant to G. L. c. 244, §§ 1 and 2, made an open, peaceable, unopposed entry onto the property for breach of mortgage conditions and recorded its certificate of entry. By deed dated January 19, 1993, and recorded on December 31, 1993, Ripley Real Estate Realty Trust conveyed the property to defendant AME Realty Corporation (AME). On or about January 4, 1993, the city's tax collector delivered a tax collection deed to the city by reason of Ripley Real Estate Realty Trust's nonpayment of the 1991 taxes. The city recorded that deed on February 2, 1993. On March 31, 1995, by operation of law pursuant to G. L. c. 244, § 1, JRS's certificate of entry

would have ripened into a fee interest. On November 1, 1996, JRS, by its president Ara Eresian, Jr., granted and recorded a $15,000 mortgage interest to Venetis.

In June of 1999, the city brought a tax lien foreclosure action in the Land Court and achieved a judgment extinguishing all rights of redemption in the property. The city had provided notice to AME as the recorded owner. AME did not appear for scheduled hearings and incurred a default judgment.

In May, 2002, AME brought a petition to vacate the judgment upon the contention that JRS as true owner of the property had not received notice of the foreclosure action and could not be bound by it.

A Land Court judge concluded that JRS's certificate of entry had *not* matured into a fee of ownership on March 31, 1995, because it had not acted as a genuine arm's-length mortgagee during the three year gestation period prescribed by G. L. c. 244, §§ 1 and 2, but rather as a hand's-length business cohort of AME. That collusive relationship negated the right of foreclosure by entry. See *Trow* v. *Berry*, 113 Mass. 139, 147 (1873); *Willard* v. *Kimball*, 277 Mass. 350, 358 (1931). The judge concluded further that, if JRS had been entitled to notice of the city's tax lien foreclosure action, it had effectively received it because the entities were thoroughly entwined in the person of Eresian as the president of AME and as the rent-collecting agent of JRS.[2]

On appeal, this court affirmed the Land Court's order, and its reasoning, denying AME's motion to vacate the tax lien judgment in an unpublished memorandum and order on November 10, 2004. *Worcester* v. *AME Realty Corp.*, 62 Mass. App. Ct. 1110 (2004). The memorandum included the following observation:

"The record also reflects evidence consistent with owner-

---

[2]Real estate papers in the record of the present appeal evidence the consorted activity of four actors. As of January 13, 1993, JRS was a trustee of Ripley Real Estate Realty Trust; AME maintained its usual place of business at 10 Ripley Street; and Eresian, president of AME and rent collector for JRS, notarized the grant of a mortgage from JRS as Trustee of Ripley Real Estate Realty Trust to AME on December 31, 1993. The record corroborates the finding that no trustworthy exchanges of title or mortgage interests occurred within or from the consortium.

ship of the property by AME and inconsistent with owner-
ship by JRS, and reflects interruptions in the purported
three-year period JRS would have had to have been the
owner in order to perfect any right to hold the subject prop-
erty under its mortgage foreclosure and notice of entry."

This element of the holding further diminished the probable
merits of any argument premised upon JRS's ownership of the
property and upon the validity of any consequent mortgage to
Venetis dependent upon that ownership.

Nonetheless in April of 2008, almost three and one-half years
after this court's affirmance and more than two and one-half
years after the purchase of the abandoned property from the city
by Main South for the construction of two units of low or moder-
ate income housing, Venetis brought the underlying petition
(captioned as a "motion") to vacate the city's foreclosure judg-
ment. A Land Court deputy recorder concluded that Venetis had
submitted no grounds to overcome the Land Court's original
reasoning (and that of the Appeals Court) locating true ownership
of the property in AME and not JRS, and precluding the grant of
any purported mortgage by JRS to Venetis on November 1, 1996.
The deputy recorder accordingly denied the petition and assessed
Venetis and his counsel attorney's fees and costs in favor of Main
South in the sum of $2,890. Venetis appeals from that final order.

*Analysis.* 1. *Standard of review.* General Laws c. 60, § 69A,
and related case law, govern petitions to vacate judgments of
foreclosure. An interested party must file such a petition within
one year of the entry of the judgment sought to be vacated, un-
less that party alleges a violation of its rights to substantive or
procedural due process. See *ibid.*; *Andover* v. *State Financial
Servs., Inc.*, 432 Mass. 571, 574-576 (2000); *North Reading* v.
*Welch*, 46 Mass. App. Ct. 818, 819-820 (1999). "Such petitions
'are extraordinary in nature and ought to be granted only after
careful consideration and in instances where they are required
to accomplish justice.' " *Lynch* v. *Boston*, 313 Mass. 478, 480
(1943), quoting from *Russell* v. *Foley*, 278 Mass. 145, 148
(1932). Allowance of a petition rests "largely but not entirely in
the discretion of the trial judge." *Lynch* v. *Boston, supra,* quot-
ing from *Bucher* v. *Randolph*, 307 Mass. 391, 393 (1940).
Consequently we review the denial of the petition for abuse of
discretion and error of law.

2. *Merits.* In this court Venetis advances essentially two arguments: (a) that the tax collector's deed to the city on January 4, 1993, failed to recite "the name of the person to whom the [unpaid tax] was assessed" in accordance with G. L. c. 60, § 54, and the name of the person upon whom the collector had made demand for payment before commencement of enforcement proceedings in accordance with G. L. c. 60, §§ 16 and 43; and (b) that the city and the Land Court failed to furnish Venetis, as a recorded mortgagee, notice of the tax title foreclosure proceedings and so deprived him of procedural and (impliedly) substantive due process. As to his first contention, Venetis argues that the collector's designation of "Ripley Real Estate Realty Trust" in the deed to the city was insufficient because it failed to identify the individual trustees; and that, consequently, the city never acquired valid tax foreclosure title for later conveyance to Main South.

Multiple weaknesses doom Venetis's first contention. First, he lacks standing to challenge the city's title because he lacks a valid mortgagee's interest, as explained below. Second, the record fails to show that he presented this argument to the Land Court in the proceeding from which he now appeals. He cannot raise it for the first time on appeal. See, e.g., *Carey* v. *New England Organ Bank*, 446 Mass. 270, 285 (2006); *The Gen. Convention of the New Jerusalem in the U.S., Inc.* v. *MacKenzie*, 66 Mass. App. Ct. 836, 841-842 (2006). He has waived it. Third, even if he were entitled to assert the contention, it would fail. Under G. L. c. 60, § 37, as appearing in St. 1943, c. 478, § 1, "[n]o tax title . . . shall be . . . invalid by reason of any error or irregularity which is neither substantial nor misleading . . . ." The designation in the tax collector's deed is neither. The argument is meritless.

Venetis's alternative general claim of deprivation of procedural and substantive due process requires an entitlement to a mortgagee's interest in the property at 10 Ripley Street. Without such an interest, he has no property right as to which he can suffer any denial of due process. In neither his petition to the Land Court, nor his present appeal, has he offered any argument against the determination of the Land Court in 2003 and the affirmance by the Appeals Court in 2004 that he could not have received any

valid mortgage interest from JRS in 1996. Nor has he identified any separate argument which he would have submitted if he had participated in the Land Court proceedings of 2003. In sum, the Land Court's disposition of the merits shows no sign of error of law or abuse of discretion.

3. *Sanctions.* As part of its opposition to Venetis's 2008 petition to vacate the city's tax title foreclosure judgment, Main South requested an award of attorney's fees and costs from Venetis and his attorney, Israel Sanchez, upon the grounds that *both* were familiar with the reasoning and results of the 2003 Land Court decision and the 2004 Appeals Court affirmance; that Venetis and Sanchez were advancing no argument or factual information responsive to the essential reasoning of those decisions (that JRS had no fee interest necessary for conveyance of a mortgage interest to Venetis); that the petition was wholly unsubstantiated, frivolous, and not advanced in good faith; and that Sanchez's advocacy constituted a wilful violation of professional duty under Mass.R.Civ.P. 11(a), 365 Mass. 753 (1974), and exposed him to the sanctions of an assessment of attorney's fees and costs. The Land Court deputy recorder assessed against Venetis and Sanchez, jointly and severally, fees in the sum of $2,890, the figure itemized and proposed by counsel for Main South.

On appeal, in accordance with the procedure prescribed by *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004), Main South has requested in its brief an assessment of appellate fees and costs against both Venetis and Sanchez. We address first the award in the Land Court and then the proposed award from the Appeals Court.

(a) *The Land Court award.* (i) *The party.* By motion Main South requested an award of fees from the Land Court upon the ground that the Venetis claim was "wholly unsubstantiated, frivolous and not advanced in good faith." It emphasized the absence of good faith and cited a significant decision concerning G. L. c. 231, § 6F, *Massachusetts Adventura Travel, Inc.* v. *Mason,* 27 Mass. App. Ct. 293, 299 (1989). However, it never specifically invoked or mentioned the statute. Similarly the Land Court awarded the requested fees for lack of good faith conduct by Venetis and Sanchez, but did not identify c. 231,

§ 6F, as the authority for the assessment. Those omissions may have diverted Venetis's attention from the appellate procedure prescribed by G. L. c. 231, § 6G: a party suffering a § 6F award in the Land Court must lodge an appeal with a single justice of this court within ten days of notice. See *Vittands* v. *Sudduth*, 49 Mass. App. Ct. 401, 412 (2000). Venetis has instead consolidated his appeal from the award of fees with his appeal on the merits. As a matter of equitable discretion, and not of right, we have considered the entitlement to the award and found it fully justified for the following reasons.

Main South occupied the position of an effective intervener forced to protect an important interest, its ownership and reliant development of the real property at 10 Ripley Street. In response to our postargument order for additional information about Main South's status, it has furnished a certified copy of the Land Court's allowance, on or about April 29, 2008, of its motion as "record owner" to file documents in opposition to Venetis's petition to vacate the tax title foreclosure judgment. Main South's obvious interest in the proceedings entitled it to intervention of right under the standard of Mass.R.Civ.P. 24(a), 365 Mass. 769 (1974) (claim of "an interest relating to the property . . . which is the subject of the action" requiring adequate representation).[3] Main South's simultaneous opposition to Venetis's petition served the purpose of an intervener's pleading as contemplated by Mass.R.Civ.P. 24(c), 365 Mass. 770 (1974). It fully informed the opposing party of the intervener's allegations and arguments.

That necessary intervention was clearly foreseeable to Venetis and Sanchez. In anticipation of the petition to vacate, on October 25, 2007, Sanchez had forwarded to Main South, by sheriff's service, a confrontational letter informing it of Venetis's entry upon, and claim to, the property (and all improvements), and "instruct[ing]" Main South "to cease and desist from any further activity" on the property or else face charges of trespass; to turn over "all keys or access devices" to Sanchez; and to add Venetis to all hazard and liability insurance coverage. The letter also

---

[3]Preferably Main South would have moved to intervene explicitly under rule 24(a), and the Land Court would have allowed the motion in those terms.

advised Main South that Venetis would be changing the locks and securing the premises within fifteen days.

The circumstances of this initiative support the deputy recorder's conclusion that Venetis's petition was wholly insubstantial, frivolous, and advanced without good faith. The petition was egregiously tardy; it trailed the tax lien foreclosure judgment by six and one-half years, the Land Court order denying AME's motion to vacate by four years and seven months, and the Appeals Court affirmance of that order by three years and five months. Consequently, it threatened the substantial reliant intervening investment and work on the part of Main South. Further, it aggressively threatened to disrupt Main South's significant assumption of more than $620,000 of acquired loans by means of an alleged interest of a small fraction of that amount ($15,000 plus interest), and it imposed litigation and its accompanying expense and delay upon the project.

Finally, beyond its tardiness and disruption, the Venetis petition was blatantly unmeritorious. With no new facts or argument, it proceeded in contradiction of an emphatically reasoned prior Land Court decision and Appeals Court affirmance, both of which viewed with skepticism the relationship and dealings of the AME and JRS entities from which Venetis had derived his claimed mortgage. In particular, the distinctive meritlessness of the Venetis petition in light of the prior decisions supports the Land Court's award against Venetis under the standards of G. L. c. 231, § 6F.

(ii) *The attorney.* As to Sanchez's role in the Land Court, under Mass.R.Civ.P. 11(a), his signature upon the Venetis petition to vacate constituted "a certificate by [Sanchez] . . . that to the best of his knowledge, information, and belief there [was] a good ground to support it." The rule continues: "For wilful violation of this rule an attorney may be subjected to appropriate disciplinary action." Rule 11(a) sanctions extend to the assessment of fees and costs if an attorney fails to show a subjective good faith belief that a pleading or motion has factual and legal support. See *Van Christo Advertising, Inc.* v. *M/A-COM/LCS,* 426 Mass. 410, 416 (1998) (pleading); *Vittands* v. *Sudduth,* 49 Mass. App. Ct. at 412 (pleading); *Psy-Ed Corp.* v. *Klein,* 62 Mass. App. Ct. 110, 113-114, 117-118 (2004) (motion); *Tilman* v. *Brink,* 74 Mass. App. Ct. 845; 850-851 (2009) (pleading). Once

the attorney is on notice of a rule 11(a) claim and has the opportunity for response by argument or affidavit, the trial court judge may make a finding about the attorney's good faith from the circumstances of his or her performance and without an evidentiary hearing. See *Psy-Ed Corp.* v. *Klein, supra* at 118; *Tilman* v. *Brink, supra* at 851-852. The reviewing court will examine the finding for abuse of discretion, "which includes consider[ation] whether proper legal standards were applied and whether there was reasonable support for the judge's evaluation of the facts." *Van Christo Advertising Inc.* v. *M/A-COM/LCS, supra* at 417. Under those standards, especially in light of the prior contrary decisions of the Land Court and Appeals Court, the absence of any distinguishing material facts or legal argument, and the unsupported confrontational letter to Main South on October 25, 2007, the Land Court had sound reason to include Sanchez in the assessment of fees in favor of Main South.[4]

(b) *Appellate award.* (i) *The party.* Main South requests an award of appellate fees and costs. The gist of its reasoning is that the present appeal is frivolous and not advanced in good faith. Rule 25 of the Massachusetts Rules of Appellate Procedure, as amended, 378 Mass. 925 (1979), authorizes the reviewing court to "award just damages and single or double costs to the appellee" if it determines an appeal to be "frivolous." Our decisions interpret the "just damages" of a frivolous appeal to include typically the attorney's fees caused to the appellee. See, e.g., *Allen* v. *Batchelder,* 17 Mass. App. Ct. 453, 458-459, 460 (1984) (award of $5,000 in damages for appellee's legal fees for the appeal, as well as double costs); *Hoppe* v. *Haskins,* 29 Mass. App. Ct. 411, 416 (1990) (award of $7,000 for "costs and attorney's fees" for frivolous appeal); *Price* v. *Cole,* 31 Mass. App. Ct. 1, 7 (1991) (award of $3,000 for attorney's fees plus double costs for frivolous appeal).

Here, the reasons itemized above in support of the Land Court's assessment against Venetis apply all the more forcefully

---

[4]On appeal, attorney Sanchez challenges the grant of the award against Venetis and himself, but not its amount. In light of the quantity and quality of Main South's Land Court papers, its resulting success, and its counsel's verified itemization of time and services, we find the figure of $2,890 well supported.

after one more ruling and admonition from the Land Court. An appeal is frivolous if, under settled law, the appellant has no "reasonable expectation of a reversal." *Avery* v. *Steele,* 414 Mass. 450, 455 (1993), quoting from *Allen* v. *Batchelder, supra* at 458. This appeal followed three adverse decisions (two from the Land Court and one from this court) upon the same dispositive issues and still failed to address the essential point of each: Venetis's lack of a valid mortgage interest. It was abundantly frivolous. It put the opposing parties to the expense of another unnecessary chapter of litigation for which they deserve compensation.[5]

(ii) *Appellate award against counsel.* Finally, Main South has requested the award of its appellate fees jointly and severally against attorney Sanchez. As grounds, it summarily incorporates its argument for an award by the Land Court under Mass.R. Civ.P. 11(a). However, "[r]ule 11 does not apply to appellate briefs" or procedure. *Avery* v. *Steele, supra* at 454 & n.4. Rather, in the absence of statutory authority, the appropriate vehicle for the assessment of appellate fees against either a party or its counsel remains Mass.R.A.P. 25. "Although we have not considered the issue directly, courts interpreting the cognate Federal rule, Fed. R. A. P. 38, have held that sanctions under the rule may be imposed *on either the party or the attorney.* We agree." (Emphasis supplied). *Avery* v. *Steele, supra* at 455 (footnote and citations omitted). The court has subsequently warned that the sanctions of rule 25 may operate against "either litigant or attorney." See, e.g., *Ashford* v. *Massachusetts Bay Transp. Authy.*, 421 Mass. 563, 568-569 (1995). For either purpose our appellate courts will consult the decisional law developed under the cognate Federal rule, Fed.R.A.P. 38. See *Rollins Envtl. Servs., Inc.* v. *Superior Ct.*, 368 Mass. 174, 179-180 (1975); *Vyskocil* v. *Vyskocil*, 376 Mass. 137, 139 (1978); Reporter's Notes to Mass.R.A.P. 25, 47 Mass. Gen. Laws Ann., Rules of Appellate Procedure, at 1183 (West 2006). Substantial case law is available.[6] Main South has not employed that source or developed adequate argument upon the important issue of an

---

[5]The city has not sought an award of appellate fees.

[6]Numerous decisions applying the sanctions of "damages" and "costs" for "frivolous" appeals under Fed.R.A.P. 38 impose both fees and expenses upon responsible appellate attorneys to serve the purposes of (a) punishment of

appellate attorney's liability for an assessment of fees. In these circumstances, the appropriate course is to defer the question to a case presenting a fully constructed argument. See *Lolos* v. *Berlin*, 338 Mass. 10, 13-14 (1958). See also *Cameron* v. *Carelli*, 39 Mass. App. Ct. 81, 83-84 (1995), and cases cited.

*Conclusion.* Within fourteen days of the date of the rescript, counsel for Main South shall submit to this court a verified itemization of its appellate fees and costs supported wherever possible by time sheets or summaries of time sheets (specifying the working attorney, the service rendered, its date and duration,

counsel causing the waste of the court's public resources; (b) compensation of opposing litigants for the waste of their private resources; and (c) deterrence of further abuse by the same or other attorneys. See, e.g., *Hill* v. *Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1200-1203 (7th Cir. 1987); *Quiroga* v. *Hasbro, Inc.*, 943 F.2d 346, 347-348 (3d Cir. 1991). See 20A Moore's Federal Practice §§ 338.02, 338.11 (3d ed. 2010); 16AA Wright, Miller, Cooper & Struve, Federal Practice & Procedure § 3984 (4th ed. 2008).

The United States Court of Appeals for the First Circuit has provided illustrative decisions. See *Cronin* v. *Amesbury*, 81 F.3d 257, 262 (1st Cir. 1996) ("An attorney's duty to represent a client zealously is not a license to harass. . . . [A]ppellants' attorney . . . crossed the line from zealous advocacy to vexatious advocacy"); *Maher* v. *Hyde*, 272 F.3d 83, 87-88 (1st Cir. 2001); *Goya Foods, Inc.* v. *Unanue-Casal*, 275 F.3d 124, 130-131 (1st Cir. 2001).

Corollaries refining the responsibility of counsel have evolved. A client's wish for further action will not excuse his attorney's prosecution of a frivolous appeal. See, e.g., *McConnell* v. *Critchlow*, 661 F.2d 116, 119 (9th Cir. 1981) ("Pursuit of a meritless claim is not justified by the client's desire to do so"); *Quiroga* v. *Hasbro, Inc.*, supra at 347 (counsel, "as a trained lawyer, should have known better" than to pursue a frivolous appeal, wasteful of the resources of the opposing party and the court, and should have "an affirmative obligation" to prevent frivolous appeals [citations omitted]).

Repetitive pursuit of unmeritorious appeals after prior warnings from trial and appellate courts will increase counsel's exposure to the assessment of financial sanctions. See, e.g., *Grove Fresh Distribs., Inc.* v. *John Labatt, Ltd.*, 299 F.3d 635, 642 (7th Cir. 2002) (counsel warned of possible sanctions in prior appeal in the same litigation); *Macklin* v. *City of New Orleans*, 300 F.3d 552, 553-554 (5th Cir. 2002) (both trial and appellate courts rejected counsel's similar argument in prior separate cases).

Thus far, a short but growing line of unpublished decisions of this court has allowed the assessment of fees under Mass.R.A.P. 25 against appellate counsel. See, e.g., *Smyrna Rebar, Inc.* v. *Modern Continental Constr. Co.*, 67 Mass. App. Ct. 1115 (2006) (appellate attorney's fees and costs awarded; subsequent order for payment of $11,500); *Smyrna Rebar, Inc.* v. *Modern Continental Constr. Co.*, 75 Mass. App. Ct. 1103 (2009) (same, subsequent order for payment of $18,533.58 plus double costs).

and the hourly rate) and by invoices or receipts of disbursements. Within fourteen days thereafter, counsel for Venetis shall file any opposition to the requested amounts.

*Order dated September 24, 2008,*
*affirmed.*