NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1711                                      Appeals Court


MONIKA M. RESSLER  vs.  DEUTSCHE BANK TRUST COMPANY AMERICAS,
trustee,[1] & others.[2]


No. 16-P-1711.

Dukes.     October 4, 2017. - December 1, 2017.

Present:  Agnes, Sacks, & Lemire, JJ.


Mortgage, Foreclosure, Assignment.  Real Property, Mortgage.
Assignment.  Trust, Trustee's authority.  Practice, Civil,
Motion to dismiss, Attorney's fees, Frivolous action.



Civil action commenced in the Superior Court Department on
July 7, 2016.

A motion to dismiss was heard by Mitchell H. Kaplan, J.


Glenn F. Russell, Jr., for the plaintiff.
Robert M. Mendillo for Deutsche Bank Trust Company Americas
& another.
Grace C. Ross, pro se, amicus curiae, submitted a brief.


---

[1] Of Residential Accredit Loans Inc. Mortgage Asset-Backed
Pass-Through Certificates, Series 2006-QS18.

[2] SunTrust Mortgage, Inc., and Lendia, Inc.  Lendia has not
participated in the litigation either in the trial court or on
appeal.

SACKS, J.  The plaintiff Monika M. Ressler (the borrower) appeals a Superior Court judgment dismissing her complaint for declaratory and other relief based on her claim that the defendant Deutsche Bank Trust Company Americas, trustee of Residential Accredit Loans Inc. Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS18 (Deutsche Bank) had acquired her mortgage in violation of a governing pooling and service agreement, making its foreclosure on her mortgage invalid.  Because the borrower's various arguments are either squarely barred by precedent or border on the frivolous, we affirm.  Although we deny Deutsche Bank's request that, as a sanction for a frivolous appeal, we award attorney's fees and costs against the borrower and her counsel jointly and severally, we caution counsel here that such a sanction is within an appellate court's authority and is more likely to be imposed if counsel fails to heed warnings against repetitive pursuit of unmeritorious appeals.[3]

Background.  We review the sufficiency of the borrower's complaint de novo, taking as true its factual allegations and drawing all reasonable inferences in her favor.  Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011).  "[W]e look

---

[3] We grant leave to file, and we acknowledge, the amicus brief of Grace C. Ross.  We do not, however, consider the arguments raised only in that brief and not by the borrower. See Pineo v. Executive Council, 412 Mass. 31, 35 n.6 (1992).

beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief." Ibid., citing Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-636 (2008). In doing so, we consider, among other things, exhibits attached to the complaint. Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).

In 2006 the borrower took a $500,000 mortgage loan from Lendia, Inc. (the lender), giving the lender a promissory note for that amount and a mortgage on her property in West Tisbury to secure the loan. The mortgage was duly and promptly recorded at the appropriate registry of deeds. The copy of the mortgage attached to the complaint indicates that in March, 2012, the lender assigned the mortgage to Deutsche Bank, as trustee for Residential Accredit Loans, Inc. (RALI), Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS18, which assignment was also duly and promptly recorded at the appropriate registry. A copy of the original note, likewise attached to the complaint, indicates that the lender assigned the note, which passed through the hands of two intermediaries before being assigned to Deutsche Bank as trustee.[4]

In 2016, Deutsche Bank, asserting that the borrower was in default, sent her a notice of mortgage foreclosure sale, citing

---

[4] The lender assigned the note to SunTrust Mortgage, Inc., which assigned it to Residential Funding Company, LLC, which assigned it to Deutsche Bank as trustee.

G. L. c. 244, § 14.  The notice attached a certification from Deutsche Bank's loan servicer, SunTrust Mortgage Co. (the servicer), pursuant to 209 Code Mass. Regs. § 18.21A(2) (2013),[5] asserting that Deutsche Bank had the right to foreclose because it owned both the mortgage and the note.  The certification, which was attached to the complaint, described "the chain of title and ownership of the note and mortgage from the date of the recording of the mortgage being foreclosed upon," id. at § 18.21A(2)(c), including by attaching a copy of the note with all endorsements forming the chain between the lender and Deutsche Bank.  See ibid.

The borrower then filed this action against Deutsche Bank, the servicer, and the lender, seeking to enjoin the foreclosure. She alleged that Deutsche Bank acted as trustee for mortgages and notes placed in trust by RALI pursuant to a trust document, also known as a pooling and service agreement (PSA), attached to

---

[5] The most pertinent clause of the regulation, 209 Code Mass. Regs. § 18.21A(2)(c), provides:

"A third party loan servicer shall certify in writing the basis for asserting that the foreclosing party has the right to foreclose, including but not limited to, certification of the chain of title and ownership of the note and mortgage from the date of the recording of the mortgage being foreclosed upon.  The third party loan servicer shall provide such certification to the borrower with the notice of foreclosure, provided pursuant to M.G.L. c. 244, § 14 and shall also include a copy of the note with all required endorsements."

the complaint.  She asserted that the PSA allowed mortgages and notes to be placed in the trust only if they had first been assigned by lenders to an entity known as Residential Funding Company, LLC (RFC), and then by RFC to RALI, and then by RALI to Deutsche Bank as trustee, all prior to the trust closing date of December 20, 2007.  She asserted that because Deutsche Bank had not documented that it had received her mortgage and note through this chain of assignments, or before the closing date, the assignments were unauthorized by the PSA and thus were void under governing New York law[6] and the common law of trusts.

Accordingly, the borrower claimed, Deutsche Bank did not validly hold the mortgage and note and so was not a "mortgagee" entitled to foreclose upon her property under G. L. c. 244, § 14, and the statutory power of sale set forth in G. L. c. 183, § 21.  See Eaton v. Federal Natl. Mort. Assn., 462 Mass. 569, 584-586 (2012) (construing term "mortgagee" in G. L. c. 244, § 14, to mean entity that also holds underlying mortgage note or acts under note holder's authority).  She also claimed that because the PSA required the mortgage and note to follow a particular chain of assignment through RFC and RALI, yet the certification from Deutsche Bank's loan servicer pursuant to 209 Code Mass. Regs. § 18.21A(2) had failed to list such a chain,

---

[6] The PSA recited that it was governed by New York law, and the borrower's complaint relied on N.Y. Estate Powers and Trusts Law § 7-2.4 (McKinney 2002).

the certification violated the regulation and thus G. L. c. 93A.[7] She sought declaratory relief as well as damages under G. L. c. 93A and for slander of title.[8]

The borrower moved for a preliminary injunction to bar the scheduled August 11, 2016, foreclosure sale. Concluding that the borrower lacked standing to assert noncompliance with the PSA, and that no violation of the regulation had been shown, a judge denied the motion for failure to show a likelihood of success on the merits. Thereafter, a different judge (motion

---

[7] We do not read the complaint to plausibly allege that the certification failed to list any assignments that actually occurred. Although the complaint asserts that the PSA "describe[s] intermediary 'sales' of the [p]laintiff's note and mortgage" (emphasis added), and the complaint elsewhere refers to "purported intermediate 'assignments'" of her note and mortgage, we find nothing in the PSA or other exhibits to the complaint referring to any such intermediary assignments of the borrower's own note or mortgage. Rather, the PSA describes generally how notes and mortgages would be assigned in order to become subject to the PSA; moreover, the list of loans attached to the PSA does not include the borrower's loan. And, as described supra, other exhibits to the complaint show that the lender (1) assigned the mortgage directly to Deutsche Bank and (2) assigned the note to SunTrust, which assigned it to RFC, which assigned it to Deutsche Bank. Although the lender's mortgage assignment also assigns the note to Deutsche Bank, it appears to make no difference here whether the note was assigned directly from the lender to Deutsche Bank or instead passed through SunTrust and RFC as well.

[8] The borrower based this claim on Deutsche Bank's allegedly having falsely asserted, by recording the mortgage assignment from the lender, that it held legal title to her property.

judge) allowed Deutsche Bank's[9] motion to dismiss under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974). The motion judge concluded, based in particular on the decision in U.S. Bank Natl. Assn. v. Bolling, 90 Mass. App. Ct. 154 (2016), that the borrower had no basis to argue that the assignments were void and thus lacked standing to assert noncompliance with the PSA.[10] The borrower appealed the resulting judgment of dismissal of the complaint as to all defendants.

Discussion. 1. The merits. The borrower now concedes that Bolling bars her previous reliance on New York law to argue that the assignments to Deutsche Bank were void for noncompliance with the PSA. See Bolling, 90 Mass. App. Ct. at 155-156. She nevertheless attempts to distinguish Bolling as

---

[9] The servicer joined in the motion; the lender did not. See note 2, supra.

[10] Implicit in the motion judge's decision, which touched only briefly on the certification under 209 Code Mass. Regs. § 18.21A(2), was the conclusion that the certification was not defective for failure to list assignments that, while assertedly required by the PSA, were not alleged to have actually occurred. Indeed, the borrower's principal theory was that the attempted foreclosure was defective precisely because those assignments had never occurred. The borrower's one-paragraph appellate argument as to her regulatory claim fails to address this obvious defect and therefore need not be discussed further. It also followed from the motion judge's analysis that the borrower lacked standing to raise a slander-of-title claim premised on the theory that noncompliance with the PSA rendered "false" Deutsche Bank's assertion that it held legal title to the property. On appeal, the borrower acknowledges that this claim was entirely dependent on her claim that the assignments to Deutsche Bank were void. Therefore, this claim also requires no further separate discussion.

having viewed a PSA solely as a contract, upon which a borrower, being neither a party nor a third-party beneficiary, has no standing to rely in challenging a trustee's claim that it has validly been assigned that borrower's mortgage.  Id. at 156-157.  She contends that her claim, in contrast, is based not on contract law but on a "well-established trust law principle" that she argues permits her, despite not being a beneficiary of the trust, to challenge the trustee's authority to take action contrary to the trust instrument, i.e., to accept the assignments of her note and mortgage in asserted excess of its authority under the PSA.[11]

We recently rejected an identical attempt by another borrower to "frame her PSA argument as a trust issue . . . ."  Strawbridge v. Bank of N.Y. Mellon, 91 Mass. App. Ct. 827, 832 n.10 (2017).

> "Whether the PSA is considered a contract or a trust document, [the borrower] is not a party to that agreement or a third-party beneficiary thereof.  Consequently, where the assignment complies with the statutory requirements, and there is no evidence to suggest the assignment is void, [the borrower] does not have standing to challenge the assignment."

---

[11] The borrower relies on the principle that a court's duty in construing a trust instrument is to give effect to the settlor's intent.  See, e.g., Hillman v. Hillman, 433 Mass. 590, 593 (2001).  But she wholly ignores the logically prior question of which persons are entitled to ask a court to construe a trust instrument in the first place.  Accordingly, we need not and do not decide whether her interpretation of the PSA is correct.

Ibid. (rejecting borrower's standing to claim mortgage assignment was invalid because it occurred after PSA closing date).[12]  Bolling and Strawbridge both relied upon the settled rule that "claims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing."  Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 354 (1st Cir. 2013).  See Bolling, 90 Mass. App. Ct. at 156; Strawbridge, 91 Mass. App. Ct. at 832 n.10.

Moreover, contrary to the borrower's claim to have standing as a matter of trust law, "[i]n the case of a private trust, only a named beneficiary, or one suing on his or her behalf, can maintain an action to enforce a trust."[13]  Weaver v. Wood, 425 Mass. 270, 275 (1997), cert. denied, 522 U.S. 1049 (1998).  See T.W. Nickerson, Inc. v. Fleet Natl. Bank, 456 Mass. 562, 570 (2010) (lessor of land from trust lacked standing to claim that trustee's decision to terminate trust violated its

_____

[12] As discussed infra, the borrower here does not argue that the assignments failed to comply with any statutory requirements, e.g., G. L. c. 183, § 54B.

[13] We reject the borrower's argument, made without citation to authority, that there is any relevant difference here between (1) "enforcing" the PSA (which she claims not to be attempting) and (2) relying on Deutsche Bank's asserted failure to acquire her mortgage and note in accordance with the PSA in order to "preclude" Deutsche Bank from foreclosing on her property, or to invalidate the foreclosure after the fact.

terms).[14]  Indeed, even under New York law (originally relied upon by the borrower), this same rule applies, and it bars, as a matter of trust law, a borrower's standing to assert noncompliance with a PSA as a basis to invalidate a mortgage foreclosure.  Rajamin v. Deutsche Bank Natl. Trust Co., 757 F.3d 79, 87-89 (2d Cir. 2014).  See id. at 86-87 (also rejecting, as matter of contract law, borrower's standing to invalidate foreclosure based on noncompliance with PSA).

The borrower also misplaces reliance on the proposition that "where a settlor has no legal authority to convey legal title to property, putting said property into an irrevocable trust is ultra vires, and the ostensible trust created thereby is consequently void ab initio."  76 Am. Jur. 2d Trusts § 41 (2016).  This proposition is inapposite, because the borrower has not alleged that RALI, as the settlor of the trust, lacked authority to convey (or failed to convey) any mortgages or notes to Deutsche Bank.  That is, she does not argue that the trust itself was void ab initio for failure to acquire any res.

What the borrower does argue is that the assignments of her particular note and mortgage to Deutsche Bank as trustee were

---

[14] There may be circumstances under which a settlor or its representatives have standing to sue a trustee to obtain a determination of the validity of a provision in a trust affecting whether the settlor or its representatives, versus the trust, owns particular interests.  See Second Bank-State Street Trust Co. v. Second Bank-State Street Trust Co., 335 Mass. 407, 409 (1957).

void, because the assignments were not made by RALI, as assertedly required under the PSA, but instead by RFC (as to the note) and by the lender (as to the mortgage).  Yet she fails to distinguish our decisions, including most recently Strawbridge, holding that borrowers lack standing (as a matter of trust law as well as contract law) to claim noncompliance with a PSA, because such noncompliance would render an assignment at most voidable.  91 Mass. App. Ct. at 832 & n.10.  Nor does she challenge the authority of RFC or the lender to make those assignments here.[15]  Nor does she address the point that the mortgage assignment, having been executed by the lender's secretary-treasurer in accordance with G. L. c. 183, § 54B, is binding on the lender, making it at most voidable by the

---

[15] Although a borrower may in some situations "have standing to challenge the validity of the assignments by which [the foreclosing entity] claims to have acquired the mortgage," Sullivan v. Kondaur Capital Corp., 85 Mass. App. Ct. 202, 206 (2014), to date these situations have involved an assignor's asserted lack of authority under State law to make an assignment, not an assignee's lack of authority under a PSA to accept it.  Kondaur Capital Corp. recognized such borrower standing in two circumstances:  (1) where the assignor did not also simultaneously hold the note, in claimed violation of Massachusetts law, id. at 209-210, or (2) where the signatory for the assignor was alleged not to have been one of the persons authorized by G. L. c. 183, § 54B, to execute such an assignment.  Kondaur Capital Corp., 85 Mass. App. Ct. at 211-213.  See Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 291 (1st Cir. 2013) (under Massachusetts law, mortgagor has "circumscribed" standing "to challenge a mortgage assignment as invalid, ineffective, or void [if, say, the assignor had nothing to assign or had no authority to make an assignment to a particular assignee]"); Woods, 733 F.3d at 354.

assignee, rather than void by reason of noncompliance with the

PSA.  Bank of N.Y. Mellon Corp. v. Wain, 85 Mass. App. Ct. 498,

502-504 (2014).  See Wilson v. HSBC Mort. Servs., Inc., 744 F.3d

1, 13 (1st Cir. 2014); Butler v. Deutsche Bank Trust Co.

Americas, 748 F.3d 28, 34 (1st Cir. 2014).[16]

In short, the borrower has not plausibly alleged that the

assignment of her mortgage (or her note) to Deutsche Bank was

void, under the PSA or otherwise, and thus she has no basis to

challenge Deutsche Bank's status as a "mortgagee" under G. L.

c. 244, § 14, with the power to foreclose under G. L. c. 183,

§ 21.  The motion judge did not err in dismissing the

complaint.[17]

---

[16] Nor are we are persuaded by the borrower's one-sentence argument that the assignment must be void because the PSA prohibits holders of certificates (in effect, holders of beneficial interests in the trust) from controlling the trust's operation.  The borrower's apparent view is that there is no one who could challenge or ratify the trustee's ultra vires acceptance of an assignment; from this, the borrower apparently concludes that such an acceptance is not actually voidable and must therefore be void ab initio.  We reject this argument because, among other reasons, we do not share the borrower's view of the clarity of the PSA on this point.  The PSA's § 11.03, relied on by the borrower, establishes a procedure for holders to bring suit under the PSA, and its § 7.04 establishes a procedure for holders to waive defaults.

[17] Ordinarily, "[w]hen an action for declaratory relief is properly brought and relief is denied on the merits, the action should not be dismissed. . . .  The rights of the parties should be declared."  Attorney Gen. v. Kenco Optics, Inc., 369 Mass. 412, 418 (1976).  Here, however, the borrower's opposition to the motion to dismiss did not raise the point, nor has either party addressed it on appeal, including the question whether all

2.  <u>Attorney's fees and costs for frivolous appeal</u>.
Deutsche Bank argues that this appeal is frivolous and asks us
to award attorney's fees and costs under Mass.R.A.P. 25, as
appearing in 376 Mass. 949 (1979), against the borrower and her
counsel, jointly and severally.  "An appeal is frivolous, so as
to risk potential imposition of a sanction, where there can be
no reasonable expectation of a reversal under well-settled law."
<u>Marabello</u> v. <u>Boston Bark Corp</u>., 463 Mass. 394, 400 (2012),
citing <u>Avery</u> v. <u>Steele</u>, 414 Mass. 450, 455 (1993).  Such
sanctions may be awarded against counsel as well as the party.
<u>Worcester</u> v. <u>AME Realty Corp</u>., 77 Mass. App. Ct. 64, 73 (2010).
In determining whether to award fees against counsel, we may
look for guidance to "the decisional law developed under the
cognate Federal rule, Fed.R.A.P. 38."  <u>Ibid</u>.  Those decisions
indicate that such an award may be appropriate where counsel,
"'as a trained lawyer, should have known better' than to pursue
a frivolous appeal, wasteful of the resources of the opposing
party and the court"; counsel has "'an affirmative obligation'
to prevent frivolous appeals."  <u>Id</u>. at 73 n.6, quoting from
<u>Quiroga</u> v. <u>Hasbro, Inc</u>., 943 F.2d 346, 347 (3d Cir. 1991).

Here, this appeal comes perilously close to being
frivolous.  Counsel, who also represented the borrowers in the

necessary parties have been joined as required under G. L.
c. 231A.  See <u>Villages Dev. Co</u>. v. <u>Secretary of Exec. Office of
Envtl. Affairs</u>, 410 Mass. 100, 106-107 (1991).

unsuccessful appeals in the Woods, Bolling, and Strawbridge cases we rely upon supra,[18] as well as other appeals unsuccessfully presenting variants of the theories advanced here,[19] likely should have known better than to pursue it, particularly after the decision in Strawbridge.  We have carefully considered all of the arguments made in the borrower's brief, even those not rising to the level of appellate argument under Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), and determined that none of them has merit.  We decline to hold the appeal so utterly without basis as to warrant an award of fees and costs against either counsel or his client.  We caution, however, that "[r]epetitive pursuit of unmeritorious appeals after prior warnings from trial and appellate courts will increase counsel's exposure to the assessment of financial sanctions."[20]  Worcester, 77 Mass. App. Ct. at 73 n.6.

Judgment affirmed.

---

[18] See Woods, 733 F.3d at 351; Bolling, 90 Mass. App. Ct. at 154; Strawbridge, 91 Mass. App. Ct. at 827.

[19] See Butler, 748 F.3d at 30; Dyer v. Wells Fargo Bank, N.A., 841 F.3d 550, 552 (1st Cir. 2016).  Counsel has also unsuccessfully presented such theories in numerous cases decided under our rule 1:28.  See Boulanger v. Wells Fargo Bank, N.A., 88 Mass. App. Ct. 1108 (2015); Hully v. Deutsche Bank Natl. Trust Co., 89 Mass. App. Ct. 1112 (2016); O'Neil v. Bank of N.Y. Mellon, 90 Mass. App. Ct. 1121 (2016).

[20] We do not imply that such repetitive appeals or prior warnings are a prerequisite to sanctions.