Curran, Dennis J., J.
Introduction
AvalonBay, which manages residential apartments, filed a two-count complaint alleging trespass and breach of contract against Paul Hamilton because he refused to leave an apartment unit after his right to use it had been terminated. It sought principally to recover the use of the apartment and coincidentally, *437 damages for the loss of the unit’s use. Hamilton counterclaimed against AvalonBay with twelve (12) allegations, as follows:
Count I — Breach of the Warranty of Habitability;
Count II — Breach of the Warranty of Covenant of Quiet Enjoyment;
Count III — Failure to Make Adequate Repairs in violation of the State Sanitary Code;
Count IV — Breach of the Warranty of Quiet Enjoyment - Abuse of Process;
CountV — Violation of G.L.c. 186, section 18, Retaliatory Eviction;
Count VI — Negligent Infliction of Emotional Distress;
Count VII — Interference with the Warranty of Quiet Enjoyment;
Count VIII — Breach of Contract;
Count IX — Violation of G.L.c. 93A, section 9;
Count X — Negligence;
Count XI — Violation of the State Sanitary Code Regulations; and
Count XII — Violation of G.L.c. 184, section 18.
The matter is presently before me on AvalonBay’s motion for summary judgment.
I. FACTUAL AND PROCEDURAL BACKGROUND
Starting in May 2003, Paul Hamilton rented an apartment in a complex managed by AvalonBay in Lexington, Massachusetts. That August, water leaked from an air conditioning unit in a nearby mechanical closet into his living room. AvalonBay staff vacuumed the water and operated industrial fans to dry the living room. Within five days, the apartment had been cleaned.
About two months later, Hamilton complained that the water had caused mold in his apartment which, in turn, caused him respiratory illness. AvalonBay agreed to address the mold issue by replacing the carpeting in Mr. Hamilton’s apartment and the section of the living room wall where the water had penetrated. Further, AvalonBay permitted Mr. Hamilton to use the model apartment in its complex while these repairs were being performed. The repairs were completed less than ten days later. Upon their completion, AvalonBay asked Hamilton to vacate the model apartment and return to his own unit. Hamilton refused.
Two weeks later, Hamilton’s attorney wrote a letter to AvalonBay enclosing a report from Boston Environmental claiming that harmful levels of mold were still in the apartment. AvalonBay retained a certified industrial hygienist to test the apartment. That firm’s tests disclosed that the level of mold concentration, although higher than that in the “control” apartment, was less than one-half of outdoor mold concentrations. The firm concluded that the “current health risk for mold-related illnesses or symptoms is deemed to be low.”
AvalonBay offered to rebate Hamilton’s rent by $2,210 from October 1 through November 4, 2003, although under no legal obligation to do so. It did claim, however, that Hamilton still owed back rent exceeding $5,500. Avalon was also losing $650 each month because it was required to pay for the leased furniture in the model unit, now occupied by Hamilton. It told Hamilton that he needed to vacate the model unit by January 20, 2004; in doing so, however, it offered him, as an option, another comparable apartment in its complex. Hamilton spurned the offer, insisting instead that he would pay no rent for either the model unit or the apartment he originally leased. In essence, Hamilton now occupied both the model unit and the other apartment — and had been for several months — rent-free.
It was at this point that AvalonBay filed its two-count complaint seeking to remove Hamilton from the model unit and requesting money damages. Hamilton responded by lobbing a miscellany of charges against AvalonBay, detailed in 12 counterclaims and 71 paragraphs.
This matter first came before the Court on February 26, 2004 on AvalonBay’s motion for a preliminary injunction. At that motion hearing, AvalonBay offered to allow Hamilton to stay in the model unit and further, offered to pay him $1,500 toward the cost of moving his belongings from the original into the model unit as long as it could retrieve its leased furniture from the model unit. It attached no conditions to this offer (i.e., it was not asking for Mitchell’s release of the claims for the mold issue against it).
After a hearing on the motion, Justice Gants, the session judge at the time, found that:
In short, AvalonBay has handled the mold problem that arose from tire water leak into tire [original] apartment as a responsible landlord, and has bent over backwards to reach an amicable accommodation with Hamilton. Hamilton has irresponsibly sought to take advantage of this situation, and appears content to occupy two apartments (one furnished by the landlord) without paying any rent or furniture leasing fee.
(See docket entry number 10.0.)
After Hamilton rejected AvalonBay’s offer, Justice Gants found the case to demonstrate “. . . one of the more bizarre displays of lawyering I have seen in six years on the bench.” Ibid.
Equitably, it is astonishing to this Court that Hamilton can contend with a straight face that he should be permitted essentially to occupy two apartments — his own and the model unit — without paying for either. Hamilton’s position is even more untenable when one recognizes that he is receiving free use of the furniture in the model unit that was *438 leased by AvalonBay, and for which AvalonBay now must pay $659 per month.

Id.

Hamilton appealed. Appeals Court Justice McHugh denied his petition for interlocutory relief, stating: “.. . [T]here is no likelihood of success on appeal.” (See paper number 12.)
A second session judge (MacLeod-Mancuso, J.) conducted two days of evidentiary hearings on AvalonBay’s Daubert motion. In a twenty-three (23) page Memorandum of Decision (see paper number 49.0), the judge excluded the testimony of John Ohman, M.D. (the Hamiltons’ treating physician), and Kenneth Weinberg, Ph.D. (a toxicologist apparently consulted by the Hamiltons — see paper 49.0, page 8). Both individuals had offered opinions — the former at the Hamilton’s attorney’s specific request — that his claimed respiratory infections and other illnesses were caused by mold exposure.
AvalonBay has since filed this motion for summary judgment because, in the absence of Drs. Ohman and Weinberg’s testimony, the Hamiltons have no reasonable expectation of showing a causal link between the mold in their apartment and their alleged respiratory illnesses, an essential element of their claims for personal injuries. We now address the effect of the Memorandum of Decision on each count, seriatim. [1], [2]
II. DISCUSSION
A. The Standard
The moving party is entitled to judgment as a matter of law if it can prove that there are no genuine issues as to any material fact. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). It bears the burden of affirmatively demonstrating the absence of a triable issue, and showing that the summary judgment record entitles it to judgment as a matter of law. Pedersen v. Time, Inc., 404 Mass. 14, 16-17 (1989). It may satisfy this burden either by submitting affirmative evidence that negates an element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991), citing Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
In deciding such a motion, the court will view the facts in the record in a light most favorable to the nonmoving party, and any reasonable inferences will be drawn in his favor. Ng Bros. Construction, Inc. v. Cranney, 436 Mass. 638, 644 (2002); Harrison v. NetCentric Corp., 433 Mass. 465, 468 (2001).
B. The Counts
All but three of Hamilton’s counts in his counterclaim assert that mold exposure caused him to suffer respiratory illnesses. (See counts I, II, III, VI, VII, VIII, IX, X, and XII.) Causation is obviously an essential element to recover for personal injuries. The Court’s exclusion of Drs. Ohman and Weinberg’s opinions rendered a fatal blow to all such personal injury claims. Hamilton cannot reasonably expect to establish the necessary causal link between the mold and his claimed personal injuries. Thus, as a starting point, AvalonBay’s motion for summary judgment must be granted on all of the Hamiltons’ personal injury claims.
We now address each count in Hamilton’s counterclaims.
Count I
Hamilton has alleged that AvalonBay breached the implied warranty of habitability because of the presence of mold in the apartment. To prove such a claim, he must establish that the premises are either “uninhabitable” as defined by the state Sanitary Code, or be in a condition that “may endanger or materially impair the health or safety, and the well-being of any tenant.” Boston Housing Authority v. Hemingway, 363 Mass. 184, 200-01 (1973). While proof of a violation of the state Sanitary Code would usually suffice as evidence that the apartment was not in habitable condition (Boston Housing Authority at 200), not every breach of the code automatically translates to a breach in the warranty of habitability where, for example, the violation was an “isolated” one. McKenna v. Begin, 5 Mass.App.Ct. 304, 308 (1977).
The relevant state Sanitary Code provision may be found at 105 C.M.R. 410.500 which requires that owners keep their dwellings “. . . free from chronic dampness ...” The Code defines chronic dampness as the “regular and/or periodic appearance of moisture, water, mold or fungi.” 105 C.M.R. 410.020 (emphasis added). There was no “regular appearance or periodic appearance of mold here: this was a one-time, isolated occurrence that happened on August 8, 2003 and within five days, AvalonBay had dried out the dampened portion of the living room. There was no report of mold either before or after this single episode.
Further, the Hamiltons cannot make the case that their health was “materially impair[ed]” because the persons they retained to testify at trial will not be permitted to so testify.
AvalonBay rightly points out the similarities of this case to Avalon Oaks v. King, 2007 Mass.App.Div. 174, where the Appellate Division of the District Court affirmed a trial judge’s decision that where the tenants were unable to prove a causal connection between the premises of the apartment and their physical condition, they failed to prove a material breach of the tenancy. Even with evidence of visible and airborne mold, the Appellate Division continued, the tenanthad failed to show chronic dampness in violation of the state Sanitary Code. The Court concluded that even if the Code were violated, “typical levels of mold commonly found in residential units is insufficient to establish an actionable condition” and that finding otherwise “... would expose every landowner to liabil *439 ity for failing to undertake impossible remediation efforts.” Avalon Oaks at 176.
Counts II, VII and X
The Hamiltons allege that AvalonBay violated their right to quiet enjoyment under G.L.c. 186, section 14, by failing to make adequate repairs to the premises. This requires that the Hamiltons prove that AvalonBay’s acts or omissions caused “. . . serious interferences with his tenancy, acts or omissions that ‘impair the character and value of the leased premises.’ ” Simon v. Solomon, 385 Mass. 91, 102 (1982), quoting Winchester v. O’Brien, 266 Mass. 33, 36 (1929). Additionally, the Hamiltons must prove that AvalonBay “at least acted negligently in not alleviating the condition.” Jabonski v. Casey, 64 Mass.App.Ct. 744, 748 (2005).
There is no evidence in the record before me that the character or value of the premises of the premises has been compromised. Moreover, Hamilton’s allegation of negligence is not one ordinarily suited for resolution through summary judgment because, obviously, the question of negligence is usually a fact determination for the jury. Petrell v. Shaw, 453 Mass. 377, 381 (2009). However, “(t]he moving party may prevail by showing that the nonmoving party has no reasonable expectation of proving an essential element of his case at trial.” Jupin v. Kask, 447 Mass. 141, 146 (2006).
Here, Hamilton’s inability in proving negligence flows from the exclusion of the two proffered experts’ testimony: the Hamiltons are unable to prove the presence of a dangerous level of mold, unable to prove a state Sanitary Code violation, unable to prove an unsafe condition in their apartment, and finally, unable to prove that any harm resulted.
There is no evidence that AvalonBay acted in anyway other than responsibly in alleviating the mold condition. The record demonstrates that AvalonBay responded timely to the Hamiltons’ initial complaint and took appropriate steps to dry out the affected portion of the living room. Two months later, when the Hamiltons complained anew of mold, AvalonBay promptly inspected the apartment, removed the offending living room carpet, excised a portion of the damaged living room wall, replaced the carpet, retained a consultant to determine the air quality of the apartment, all the while offering the Hamiltons the opportunity to move into an AvalonBay premier (“model”) unit, fully furnished, at no expense.
These facts cannot be reasonably said to create an inference of an impairment of the value of the apartment or Avalon’s negligence in alleviating the mold condition.
Counts III and XI
The Hamiltons allege that AvalonBay violated the state Sanitary Code and G.L.c. Ill, section 127L by its failure to make adequate repairs. Judgment must enter for AvalonBay on these counts because “the violation of a safety statute or ordinance does not in itself give rise to a cause of action, but is evidence of negligence.” See Dolan v. Suffolk Franklin Savings Bank, 355 Mass. 665, 667 (1969).
Count IV
The Hamiltons claim that AvalonBay breached their quiet enjoyment under G.L.c. 186, section 14, by filing a “baseless complaint” in attempting to recover possession of the model unit.
AvalonBay had permitted the Hamiltons to occupy the model unit while it repaired the leased premises. At that point, although the Hamiltons were mere licensees as to the model unit, they refused to leave. AvalonBay offered them back their repaired and cleaned leased unit. But the Hamiltons failed — or refused — to understand that a license is revocable at the will of the possessor of the property and that such revocability is “. . . the essence of a license to use the land of another.” Beal v. Eastern Air Devices, Inc., 9 Mass.App.Ct. 910 (1980).
AvalonBay’s two-count complaint was anything but baseless, and was so found by Justice Gants when he found the Hamilton’s conduct “astonishing,” “untenable,” and wondered how the Hamiltons “[could] contend [otherwise] .. .with a straight face.” (See paper number 10.0.)
Counts V and XII
Counts V and XII allege that AvalonBay commenced a retaliatory eviction against the Hamiltons, thereby violating G.L.c. 186, section 18. To make such a case, the Hamiltons must prove that they engaged in some protected activity and that AvalonBay threatened or took reprisal action against them for engaging in such protected activity. See G.L.c. 184, section 18. The only pertinent protected activity here is the Hamiltons’ reporting a suspected violation of the state Sanitary Code. The state statute, however, requires a written report, which did not occur here, and thus, the statute cannot be invoked. Moreover, AvalonBay offered the Hamiltons several options: either move back into their leased apartment or stay in the model unit. In his decision, Justice Gants noted that the Hamiltons had rejected AvalonBay’s offer and instead, claimed the right to occupy two units — simultaneously—and rent-free.
Judgment must, therefore, enter against the Hamiltons because they have no reasonable expectation of proving that AvalonBay retaliated against them for complaining about the conditions in their apartment.
Count VI
This count, for the negligent infliction of emotional distress, must fall by the side as well because the Hamiltons have no reasonable expectation of establishing the presence of dangerous levels of mold, a state Sanitaiy Code violation or physical harm caused by AvalonBay’s negligence. Thus, since neither negligence nor causation can be established, this count, too, must be dismissed. An earlier session judge (Fremont-Smith, J.) dismissed the claims of the two Hamilton children due to a lack of sufficient objective symptomatology. Given the exclusion of Drs. Ohman and Weinbergs testimony, this *440 court is now compelled to render the same result as to the claim of their father, Paul Hamilton.
Count VIII
The Hamiltons contend that AvalonBay breached their lease by filing eviction proceedings in bad faith, by violating the state Sanitary Code and by retaliating against them for withholding rent. For reasons discussed above (i.e., the Hamiltons cannot prove a dangerous level of mold existed, a state Sanitary Code violation or a materially unsafe condition in their apartment), this count, which is simply a recasting of allegations in other earlier counts, cannot survive AvalonBay’s motion.
Count IX
For the reasons expressed in the preceding’discussion, this count seeking as it does, chapter 93A damages, cannot survive. The Hamiltons are simply unable to establish genuine issues of material fact (i.e. causation and injury) to enable them to put their case before a fact-finder.
Count XII
G.L.c. 184, section 18 (invoked in this count) prohibits landlords from engaging in self-help. Here, AvalonBay did change the locks on the model unit, a unit to which the Hamiltons were licensees only, but took no such or similar action as to the Hamilton’s leased unit, that is, the unit to which their tenancy attached. Accordingly, judgment must enter for AvalonBay on this count as well.
III. THE ATTORNEYS FEE ISSUE
G.L.c. 93A, section 9, and chapter 186, sections 15F and 18 all share two common denominators: (1) each permits the recovery of attorneys fees; and (2) each has been invoked by the Hamiltons in their counterclaims.
All of these statutes were well-intended, and indeed, noble efforts to level the legal playing field for those of modest means and station in life. But regrettably, some litigants have twisted them into something never intended: setting up a lottery game in which the interests of the attorney in obtaining a windfall for needlessly-generated attorneys fees have become the driving litigational force, rendering the clients’ interests secondary. This is wrong. While fee-shifting statutes are obviously the creation of the legislature, the responsibility for their policing falls upon the courts.
Here, AvalonBay filed a simple two-count eviction complaint, and the Hamiltons launched a retaliatory strike. The toll of such incendiary tactics includes the following:
This case consumed almost six years of the court’s time, having been filed on February 19, 2004;
The original Tracking Order (extended only twice to accommodate the need for an additional five months of discovery) called for judgment to enter over four years ago, on January 15, 2006;
The docket sheets (all single-spaced) consumed some 13 pages;
The parties have filed 55 pleadings;
There have been 38 scheduled court events (not including an additional 18 Status Reviews scheduled and performed by the Clerk);
Six Superior Court judges and one Appeals Court judge have been called upon to address this case.
Six years ago, Justice Gants found AvalonBay’s conduct to be “responsible]” and the Hamilton’s lawyering “bizarre,” observations that ring every bit as true today as when made on February 26, 2004. It has taken six years, significant counsel fees and needless taxing of our already limited judicial resources (squandering, as it did, untold judge and clerk’s staff hours), so that the Hamiltons may be allowed to play lawsuit roulette. Such reveals a systemic weakness in our judicial process, and more importantly, compels further inquiry.
At oral argument on this motion, the Court bluntly asked the Hamiltons’ attorney what continued to motivate their claims. Their counsel admitted — with a smirk — counsel fees.
Such cynicism and “gaming” of the system are deeply troubling; our system of justice ought not to be perverted into a litigation lottery.
For these reasons, AvalonBay is invited to file a motion under G.L.c. 231, section 6F within forty-five (45) days of the date of this Order, along with detailed and comprehensive proposed Findings of Fact. The Hamiltons are invited to file a response to such pleadings within thirty (30) days thereafter; as a condition of their opposition, however, they will be required to produce redacted copies of their own billing records in this case so that the Court may, in turn, evaluate the reasonableness of AvalonBay’s request. Hamilton’s submission shall be accompanied by an affidavit from each of Hamilton’s counsel, certifying that no billing entries (except as to redactions) have been altered in any way for purposes of this submission.
After receiving both parties’ papers, the court will promptly schedule a hearing on this motion.
ORDER
For the foregoing reasons, the defendant-in-counterclaim AvalonBay Communities, Inc.’s motion for summary judgment is ALLOWED as to Counts I through XII. Judgment shall enter forthwith for AvalonBay as to all such counts.

 On May 31, 2006, AvalonBay also filed a motion for partial summary judgment on the issue of the negligent infliction of emotional distress as to the two Hamilton children. After a hearing, the Court (Fremont-Smith, J.) allowed the motion, finding that “]t]he undisputed facts indicate that ... there is no evidence of substantial physical symptomology (sic) caused by the alleged conduct of the defendant.” (See paper number 29.)

Given the rulings in the Memorandum of Decision, it is problematic as to what, if any, counts remain viable. Justice Gants, in a prophetic observation, found the Hamiltons’ lawyering “bizarre,” but at oral argument on this motion, the motivation behind the continued existence of this case revealed itself, as noted later in this opinion.