Curran, Dennis J., J.
Introduction
This case is before the Court on the defendant-in-counterclaim AvalonBay Communities, Inc.’s motion for attorneys fees and costs under G.L.c. 231, §6F, after the Court allowed its motion for summary judgment [26 Mass. L. Rptr. 436].
For the following reasons, this motion is ALLOWED in part. In so ruling, the Court issues the following Findings of Fact, as statutorily required.
I. FINDINGS OF FACT
In August 2003, water leaked into the living room of the Hamilton’s apartment in Avalon at Lexington. AvalonBay, the management company for the apartment complex, quickly took steps to repair the leak and dried out the premises within five days.
Two months later, in October 2003, Paul Hamilton complained to AvalonBay that he was suffering from respiratory illness due to an alleged exposure to mold in the premises caused by the water leak.[1] AvalonBay responded by allowing the Hamiltons to use a model unit at Avalon at Lexington while it replaced the section of carpeting and living room wall penetrated by the water. Following the repairs, AvalonBay had the apartment tested by a certified industrial hygienist who found that the mold concentrations outside of the premises were more than twice as high as inside the apartment, and concluded that any related health risk was low.
After the repairs were completed, Hamilton refused to move back into the premises from the model unit. He rejected AvalonBay’s offer to move the family to a comparable unit at its expense. He refused AvalonBay’s offer to rebate one full month’s rent. Instead, the Hamiltons simply remained in the model unit, maintained possession of the original premises, and stopped paying any rent altogether.
On February 19, 2004, AvalonBay filed a single-count complaint for trespass against the Hamiltons, seeking immediate possession of the model unit and rent owed on the premises. (See complaint, paper no. 1, copy attached and marked “A.”)* The Hamiltons responded by filing a 12-count counterclaim. At the hearing on its motion for preliminary injunction, AvalonBay again offered to allow the Hamiltons to remain in the model unit and pay up to $1,500 in moving costs to carry the Hamiltons’ possessions from the premises to the model unit.
AvalonBay’s request for equitable relief to evict the Hamiltons from the model unit was allowed. In doing so, the session judge, then Superior Court Associate Justice Gants wrote that the defendant lawyer’s rejection of the offer, “[w]as one of the more bizarre displays of lawyering [he] has seen.” Moreover, he held that AvalonBay had acted as a “responsible landlord and has bent over backwards to reach an amicable situation with Hamilton.” (See Findings of Fact and Conclusions of Law on Plaintiffs Motion for a Preliminary Injunction, paper no. 10, copy attached and marked “B.’j*
On February 27, 2004, the Hamiltons appealed Justice Gants’ decision to the Appeals Court where Single Justice McHugh denied the appeal, finding “as the motion judge [did, that] there is no likelihood of *159 success on appeal.” (Emphasis added.) (See Notice of Docket Entry in AvalonBay Communities, Inc. v. Paul Hamilton, Appeals Court Docket No.: 2004-J-0089, docketed as paper no. 12, attached and marked “C.’j*
Several years of contentious discovery ensued. The docket sheets spanned some 15 pages (a copy of which are attached hereto and marked “D”);* 61 court events[2] were scheduled over a six-year period and the case demanded the attention of seven Superior Court Justices and one Appeals Court Justice.
On May 31, 2006, the defendant-in-counterclaim AvalonBay filed a motion for partial summary judgment (see paper no. 29.0) which, after a hearing, was allowed by a second session judge (Fremont-Smith, J.).
What then remained of Hamilton’s case rested primarily on the expert opinions of two individuals: Bruce Gulls, M.D., and Kenneth Weinberg, Ph.D. Both experts concluded that Hamilton had developed asthma and chronic respiratory disease due to exposure to mold in the premises and opined that Hamilton’s injuries were severe, disabling, and permanent.
AvalonBay filed a Daubert motion, challenging the admissibility of Drs. Gillis’ and Weinberg’s opinions because they were not based upon a scientifically-reliable theory. A third session judge (MacLeod-Mancuso, J.) conducted two days of evidentiary hearings. On the eve of the hearing, the defendant’s attorney withdrew Dr. Gillis as a witness and substituted John Ohman, M.D., Hamilton’s treating physician, as his chief medical expert. Thereafter, the session judge rendered a thoughtful and lengthy decision, granting AvalonBay’s Daubertxn otion because the opinions of Hamilton’s expert witnesses were not based upon a generally-accepted or otherwise reliable scientific theory. (See Memorandum of Decision and Order, dated April 27, 2009, paper no. 49, attached and marked “E.’j*
Specifically, the judge found: (1) no testing of the premises for mold was ever conducted during the period of time that the Hamiltons resided in the apartment, such that the Hamiltons could never establish what, if anything, they were exposed to; (2) none of the industrial hygienists that tested the apartment obtained test results that would, in general, lead them to recommend further remediation; (3) there is no generally-accepted or other reliable scientific theory which established a causal relationship between exposure to mold and respiratory illness, in the absence of an allergic reaction; (4) prior allergic testing revealed that Hamilton was not allergic to the only mold found in the premises at an arguably elevated level; and (5) Hamilton had worked with various chemicals that are known to cause respiratory health problems for a period of 25 years, yet his experts did not conduct any testing to exclude exposure to those chemicals as the basis of his illness. The exclusion of their experts left the Hamiltons utterly unable to prove an essential element of their case; their claims against AvalonBay were now transparently a nullity.
Despite this critical development, the Hamiltons persisted in this lawsuit, forcing AvalonBay to incur significant legal expense in drafting, filing and arguing a motion for summary judgment on all remaining counts of the Hamilton’s counterclaim. AvalonBay argued that without expert testimony, the Hamiltons were unable to prove causation. The Hamiltons opposed this motion, and after a hearing, the motion was allowed. (See Memorandum of Decision and Order dated February 5, 2010 (sic), paper no. 54, copy attached and marked “F”*) [26 Mass. L. Rptr. 436).
AvalonBay’s motion for fees is organized into three discrete litigation phases: (1) those services rendered in the trespass complaint filed against the Hamiltons (Le. to regain possession of the model unit); (2) those incurred in defending against the Hamiltons’ twelve-count counterclaim; and (3) those forced by the Hamiltons’ insistence in pressing its claims despite having no causation expert (Le., those services rendered to AvalonBay after the Daubert decision was issued on April 29, 2009). For the first phase, AvalonBay seeks $9,075; for the second, $156,460.50; and for the third, $23,875. AvalonBay’s total request is for $189,410.50.
We address each phase of the lawsuit.
a. The First Litigation Phase: The Hamiltons’ Defense to the Trespass Count
The Hamiltons were bare licensees who occupied a fully-furnished, model apartment, with no legal right to remain there after AvalonBay revoked their license to use it. In his decision, then Associate Justice Gants stated that the Hamiltons’ contention that they had a right to remain in the unit “astonishing” and was surprised that the Hamiltons advanced arguments that they had a right to remain in the premises, “with a straight face.”[3] That prescient observation exposed the absurdity of the Hamilton’s position: they insisted upon occupying two apartments at the same time, without paying rent, despite AvalonBay’s offer to move them to a comparable apartment at its own expense. As Justice Gants ruled: “Here, Hamilton had neither a legal nor equitable leg to stand on.” (See Memorandum of Decision, page 3.)
Hamiltons’ defense was marginally frivolous and although it presents a close question, given the freshness of AvalonBay’s complaint, I cannot declare it wholly insubstantial at that time. However, with the passage of time in this case, both the Hamiltons’ knowledge of the insubstantial nature of its claims and its culpability increased.
There can be little doubt that the $9,075 expended by AvalonBay’s attorneys to prosecute the trespass claim was both reasonable and necessary. Nevertheless, I decline to find that Hamilton’s conduct — at this first stage of the lawsuit — meets the high burden imposed by G.L.c. 231, Section 6F.
*160 b. The Second Litigation Phase: The Hamiltons’ Counterclaims
The Hamiltons filed a 12-count counterclaim against AvalonBay alleging personal injuries and property damages based on their belief that dangerous levels of mold caused them to develop respiratory illness and rendered the apartment uninhabitable.
Justice Thayer Fremont-Smith heard AvalonBay’s motion for partial summary judgment on the Hamilton children’s claim that they suffered from the negligent infliction of emotional distress, after which he concluded that: “[T]he undisputed facts indicate ... no evidence of substantial physical symptomology . . .” (See Ruling of Judge Thayer Fremont-Smith, dated May 31, 2006.)
Justice MacLeod-Mancuso heard AvalonBay’s Daubert motion which sought to exclude Hamiltons’ expert witnesses from testifying. The judge allowed that motion, thereby now exposing the barrenness of Hamilton’s counterclaim. Until that decision had been rendered, however, the Hamiltons’ advancement of their counterclaim was arguably appropriate because, at the time, “tests [had] revealed the presence of mold [and t]wo experts, found to be qualified by this Court to give expert testimony, [had] informed the Hamiltons and their counsel that the mold in their unit caused their illness.” (See Hamilton’s opposition memorandum at page 3.) For these reasons, I cannot find that the claims advanced in this second litigation phase violated G.L.c. 231, Section 6F and must also deny AvalonBay’s request for attorneys fees in the sum of $156,460.50.
c. The Third Litigation Phase: The Hamiltons’ Obstinance
Where this Court draws the line, however, is in the Hamiltons’ unreasonable continuation of this legal nullity (for “obstinance or avarice”)[4] after the Court has found their experts unqualified to testify on the issue of causation. They forced AvalonBay to draft, file, and argue a motion for summaiy judgment on the Hamilton’s counterclaims; they compelled it to needlessly prepare for trial; they imposed burdens of substantial and expensive legal work. Equally important, they squandered this Court’s limited resources. All of these wasteful expenditures of time, money and resources were directly and solely attributable to the indefensible intransigence of the Hamiltons and their counsel. In this third phase of litigation, AvalonBay asserts that it incurred $23,875 in legal fees, of which the Court approves $22,470. The accompanying Recapitulation (created by the court and marked “G”*) itemizes those approved fees.
SPECIFIC FINDINGS OF FACT ON AVALONBAY’S REQUESTS

As to those requested by AvalonBay:

ALLOWED as to Requests numbered 1 through 6, 7 (as to the first and third sentences thereof), 8, 9, 10 and 11.
DENIED as to Request numbered 7 (second sentence only) and 12.

As to those requested by the Hamiltons:

Not applicable; none requested.
II. DISCUSSION
A. Introduction
General Laws c. 231, §6F, provides that:
Upon motion of any party in a civil action . . . the Court may determine, after a hearing, as a separate and distinct finding, that all or substantially all of the . . . counterclaims, whether of a fixed, legal or mixed nature, made by any party who was represented by counsel during most or all of the proceeding, were wholly insubstantial, frivolous and not advanced in good faith .. . [T] he Court shall award to each party against whom such claims were asserted an amount representing the reasonable counsel fees and other costs and expenses incurred in defending against such claims.
Under this statute, attorneys fees may be recovered from any party or attorney if the claim is “wholly insubstantial, frivolous, and not advanced in good faith.” Tillman v. Brink, 74 Mass.App.Ct. 845, 852 (2009).
The Supreme Judicial Court has described actions not in good faith as those “interposed for any improper purpose, such as to cause ... needless increase in the cost of litigation.” Hahn v. Planning Board of Stoughton, 403 Mass. 332, 337 (1988). An absence of good faith can be found when a person “knows of or has reason to know” that his claim or defense lacks any substantial, factual or legal support. Pinto v. Trust Ins. Co., 2004 WL 2341345, 1 (Mass.Super. 2004). When a claim is not supported by any evidence, the claimant’s subjective belief does not prevent a finding that the claim was not advanced in good faith. Massachusetts Adventura Travel, Inc. v. Mason, 27 Mass.App.Ct. 293, 297 (1989). In determining what is a reasonable amount of attorneys fees under the statute, the factors to be considered include “The ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by controversy, and the results secured.” In re: Estate of King, 455 Mass. 796 (2010). To this end, we address the necessary factors under G.L.c. 231, §6F to assess the reasonableness of this fee request.
B. Analysis of G.L.c. 231, 6F Factors 1. Time Spent
AvalonBay’s time records were detailed, properly descriptive and complete; however, several adjustments are in order.
Its supporting affidavit reports that “[it has] redacted any and all time spent by attorneys other than [the affiant, Richard D. Weil] in order to make the request more reasonable ...” This statement is almost entirely correct, but several time charges incurred by non-affiants were inadvertently included in the item *161 ization submitted to the Court. Those charges included 1.6 hours expended on 9/16/09 by timekeeper “AMR," 1.0 hours on 9/22/09, 2.1 hours on 10/14/09, and 1.1 hours on 10/15/09 (all expended by timekeeper “EBS”), as well as 1.3 hours on 2/8/10 by timekeeper “RVD.” I have also excluded as unnecessary courier charges of $65.00 and $109.99 incurred on 9/16 and 9/23/09, respectively.
In a prior Memorandum (see paper no. 54 at “Fj [26 Mass. L. Rptr. 436], this Court expressly required, as a condition of Hamilton’s opposition to AvalonBay’s fee petition, that:
[They] . . . produce redacted copies of their own billing records on this case so that the Court may, in turn, evaluate the reasonableness of AvalonBay’s request. . .
Hamiltons’ counsel has implied in its opposition it did, in fact, maintain time records,[5] but has failed, despite the Court’s entreaty, to produce them. Indeed, in none of its eleven pages of opposition materials (Le., its six-page memorandum, two-page opposition, or three-page affidavit of counsel) do the Hamiltons challenge any specific time charged or expense incurred by AvalonBay. The inference is inescapable: the Hamiltons concede the reasonableness of AvalonBay’s detailed legal fees and costs. Although AvalonBay’s time charges are unchallenged, I have reviewed them independently and find them well-documented, reasonable and necessary (excepting several adjustments previously outlined).
2.Nature of the Case
After AvalonBay filed its single-count complaint, the Hamiltons asserted a Hydra-like counterclaim alleging mold exposure and claiming a constellation of medical sequelae from which Paul, Matthew and Sandra Hamilton now claim to have suffered. Hamiltons’ counsel claimed that these conditions were serious and permanent, and issued a settlement demand for $1 million. This demand compelled AvalonBay to incur additional legal bills. While the ultimate result for AvalonBay was an unabashed success, the road to that result was difficult, torturous and expensive. Along this legal journey, at least three prior Superior Court session judges (and indeed, one Appeals Court judge) issued cautionary markers, but the Hamiltons (and their counsel) ignored these admonitions and obstinately insisted on proceeding into a needless affray.
3.Results Obtained
AvalonBay’s extensive, but required, defense resulted in complete vindication. A first session judge granted its request for equitable relief; a second trimmed away those counts in which the Hamilton children claimed that AvalonBay had negligently inflicted emotional distress; and a third session judge eviscerated Hamiltons’ counterclaim by finding that neither of their proffered experts had based their opinions on a scientifically accepted theoiy, leaving the Hamiltons utterly unable to prove their case.
4.The Amount of Damages AvalonBay filed a simple one-count trespass complaint. The Hamiltons responded with a blizzard of a counterclaim, alleging:
Count I — Breach of the Warranty of Habitability;
Count II — Breach of the Warranty of Covenant of Quiet Enjoyment;
Count III — Failure to Make Adequate Repairs in violation of the State Sanitary Code;
Count IV — Breach of the Warranty of Quiet Enjoyment — Abuse of Process;
Count V — Violation of G.L.c. 186, Section 18 — Retaliatory Eviction;
Count VI — Negligent Infliction of Emotional Distress;
Count VII — Interference with the Warranty of Quiet Enjoyment;
Count VIII — Breach of Contract;
Count IX — Violation of G.L.c. 93A, Section 9; Count X — Negligence;
Count XI — Violation of the State Sanitary Code Regulations; and
Count XII — Violation of G.L.c. 184, Section 18.
Hamilton’s stratagem substantially increased AvalonBay’s risk of exposure and suddenly metastasized into a $1 million settlement demand. AvalonBay was forced to expend significant legal time and costs.
5.Hourly Rate
AvalonBay’s counsel’s hourly billing rate of $300, reduced for purposes of this fee petition from $315, is both modest and reasonable, given the level of skill and experience of the attorney involved. Moreover, for ease in calculation, attorney Weil has waived the many time charges incurred by firm attorneys other than him.
6.Experience, Reputation and Ability of the Attorney
The billing attorney, Steven D. Weil, was highly skilled and well-seasoned. He began his 24-year professional career laboring as a staff attorney for the South Middlesex Legal Services during which he represented tenants. He has served as an associate at the highly-respected law firm of Griffin and Goulka, as a partner at Cohen & Fierman, and presently, as a stakeholder at his law firm. He concentrates on civil litigation and real estate matters and represents management companies such as AvalonBay, the Dolben Company, and Forest City Management, Inc.
Attorney Weil’s time spent on this matter was disciplined, appropriate and reasonable.
7.Necessity for Services.
This case consumed six years, forcing AvalonBay’s attorneys to expend time from December 23, 2003 through at least February 11, 2010,[6] clearly diverting them from other cases and tasks.
*162 C. The Hamiltons’ Opposition
Hamilton’s counsel predicts that a favorable decision for AvalonBay here would unleash a parade of horribles:
Employment lawyers would not be able to afford to take cases . . .
Consumer lawyers would not be able to fight rip-offs
Lawyers for military veterans would no longer be able to pursue claims . . .
Civil rights lawyers would be unable to take discrimination cases.
(See defendant’s opposition memorandum at page 3.)
“The list goes on,” he continues.
Hamiltons’ counsel’s attempt to clothe himself in the mantle of such principles finds no support in the facts of this case. Fee-shifting statutes in consumer protection, employment law, veterans’ matters, and civil rights cases are not only laudable, but necessary and appropriate. Hamilton’s counsel’s criticism misses the mark. The legislature has also established a fee-shifting statutory mechanism for those cases utterly devoid of merit. This is such a case. Indeed, this truth emerged in open court when this judge quizzically asked their counsel what continued to motivate the Hamiltons to pursue this matter despite the utter absence of expert testimony and an inability to meet an essential element of their case. Hamilton’s counsel answered, with a smirk, “attorneys’ fees.”
A case advanced in “good faith” cannot be predicated on cynicism and gamesmanship: it must be prosecuted for proper purposes, with the client’s interests paramount, and the attorneys fee, secondary. As poignantly observed by Appeals Court Justice Sikora in City Rentals, LLC v. BBC Co., Inc., 79 Mass.App.Ct. 559 (2011), it was now apparent that “the fee tail was wagging the damages [litigation] dog.”[7]
As this Court stated in its previous Memorandum of Decision (see paper no. 54 at “F”), fee-shifting statutes are well-intended efforts to level the legal playing field for those of modest means and station in life. But regrettably, some litigants have twisted them into something never intended: setting up a lottery game in which the interests of the attorney in obtaining a windfall for needlessly-generated attorneys fees have become the driving litigational force, rendering the clients’ interests secondary. This is wrong. While fee-shifting statutes are obviously the creation of the legislature, the responsibility for policing them falls upon judicial shoulders.
The point has been eloquently made by a lawyer of another era:
There is a vague popular belief that lawyers are necessarily dishonest. I say vague, because when we consider to what extent confidence, and honors are reposed in, and conferred upon lawyers by the people, it appears improbable that their impression of dishonesty, is very distinct and vivid. Yet the. expression is common — almost universal. Let no young man, choosing the law for a calling, for a moment yield to the popular belief. Resolve to be honest at all events; and if in your own judgment you cannot be an honest lawyer, resolve to be honest without being a lawyer. Choose some other occupation, rather than one in the choosing of which you do, in advance, consent to be a knave.[8]
CONCLUSION
Although AvalonBay’s legal fee of $9,025 to file the trespass action and $156,460.50 to defend itself against Hamilton’s counterclaim were both reasonable and necessary, I cannot find that before Justice Mac-Leod-Mancuso’s decision rendered on April 29, 2009 (i.e., the first and second litigation phases), the Hamiltons’ conduct was wholly insubstantial, frivolous, and not advanced in good faith as required by G.L.c. 231, Section 6F. However, after that decision was issued, I must, and do, so find.
ORDER
For the foregoing reasons, the defendant-in-counterclaim AvalonBay’s motion for attorneys fees is ALLOWED in the sum of $22,470. The responsibility for paying this sum shall be divided equally between Paul Hamilton, individually, and the law firm of D’Angelo & Hashem, P.C.; that is, $11,235 shall be borne by the defendant Paul Hamilton, and $ 11,235 by the law firm of D’Angelo & Hashem, P.C.
Such payment shall be made within ninety (90) days of the date of this Order, with a copy of the certified or treasurer’s check directed to the attention of this Court.

He also claimed that his two minor children suffered similar ailments.

Of these 61 events, 18 were status reviews scheduled and performed by the Assistant Clerk.

Justice Gants found Hamiltons’ position “even more untenable when one recognizes that he is receiving free use of the furniture and the model unit that was leased by AvalonBay, and for which AvalonBay must now pay $659 per month.”

See Fronk v. Fowler, 456 Mass. 317, 336 (2010).

As the Hamitons’ opposition memorandum states at page 3: “D’Angelo & Hashem, P.C. agreed to provide that representation on a contingency fee basis with the knowledge that this case operated on a fee-shifting basis.”

Undoubtedly, time was also expended after this date, but this is the last entry on the fee petition.

In City Rentals, the Court offered that the comment appeared “at first blush” to apply to that case, but upon further analysis, was determined inapt.

“Abraham Lincoln’s Notes for a Law Lecture” from An Honest Calling: The Law Practice of Abraham Lincoln. Mark Steiner, p. 3. See also 10 Collected Works of Abraham Lincoln 20 (Roy P. Basler ed., 1953-1990).

Editor's Note: The referenced attachment has not been reproduced.